# 11-5229-cv

## United States Court of Appeals
### for the
## Second Circuit

———

LISA PARISI, SHANNA ORLICH, H. CHRISTINA CHEN-OSTER,

*Plaintiffs-Appellees,*

— v. —

GOLDMAN, SACHS & CO., THE GOLDMAN SACHS GROUP, INC.,

*Defendants-Appellants.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR
## DEFENDANTS-APPELLANTS

PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants-Appellants*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendants-Appellants Goldman, Sachs & Co. and the Goldman Sachs Group, Inc. state as follows:

Goldman, Sachs & Co. is a wholly-owned subsidiary of The Goldman Sachs Group, Inc., a publicly held corporation.

The Goldman Sachs Group, Inc. has no parent corporation and, to its knowledge, no publicly held corporation owns 10% or more of its common stock.

# <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF JURISDICTION..................................................................1

ISSUES PRESENTED FOR REVIEW .........................................................2

STATEMENT OF THE CASE........................................................................3

    I.     PARISI'S CLAIMS................................................................3

    II.    GOLDMAN SACHS' MOTION TO ENFORCE THE
ARBITRATION AGREEMENT .......................................3

    III.   THE MAGISTRATE JUDGE'S REFUSAL TO COMPEL
ARBITRATION................................................................4

    IV.   THE MAGISTRATE JUDGE'S DENIAL OF
RECONSIDERATION IN LIGHT OF *CONCEPCION* ....................5

    V.    THE DISTRICT JUDGE'S ADOPTION OF THE
MAGISTRATE JUDGE'S ORDER ...................................6

STATEMENT OF THE FACTS .....................................................................7

    I.     THE PARTIES .....................................................................7

    II.    TERMS OF PARISI'S MANAGING DIRECTOR
AGREEMENT ................................................................8

STANDARD OF REVIEW .........................................................................10

SUMMARY OF ARGUMENT ....................................................................11

ARGUMENT ...............................................................................................14

    I.     THE FAA MANDATES ENFORCEMENT OF THE
ARBITRATION AGREEMENT .....................................14

         A.    Parisi Has a Valid and Enforceable Arbitration
Agreement...............................................................14

         B.    There Is No "Congressional Command" That Any
Private Title VII Claim Cannot Be Arbitrated.........................17

         C.    Judicial Decisions Do Not Create a Congressional
Exclusion from Arbitration ....................................21

             1.    In Private Cases "Pattern or Practice" Is a
Judicially-Created Method of Proof, Not a
Congressionally-Created Substantive Statutory
Right. ..........................................................22

# TABLE OF CONTENTS
## (continued)

Page

    a.    Pattern or Practice Actions Can be Brought Only by the Government ...................................... 22

    b.    Individual Claims Must Be Brought Under Section 706 .......................................................... 25

  2.  The Arbitrator Can Determine the Admissibility of "Pattern or Practice" Proof ......................................... 29

  3.  Title VII Does Not Guarantee Individual Plaintiffs an Inalienable Right to Litigate a Class Action ............. 32

II.  FEDERAL DECISIONS ADDRESSING CHALLENGES TO PARTICULAR ARBITRATION AGREEMENTS DO NOT SUPPORT THE CATEGORICAL EXCLUSION FOUND HERE ................................................................................ 34

CONCLUSION ................................................................................. 40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*14 Penn Plaza LLC v. Pyett*,
129 S. Ct. 1456 (2009)......................................................................19

*Aguinda v. Texaco, Inc.*,
303 F.3d 470 (2d Cir. 2002) ............................................................34

*Alexander v. Sandoval*,
532 U.S. 275 (2001)..........................................................................25

*Arciniaga v. GMC*,
460 F.3d 231 (2d Cir. 2006) ............................................................10

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)...............................................................passim

*Booker v. Robert Half Int'l, Inc.*,
413 F.3d 77 (D.C. Cir. 2005)............................................................31

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .............................................................37

*Celestine v. Petroleos de Venezuela S.A.*,
266 F.3d 343 (5th Cir. 2001) ...........................................................26

*Circuit City Stores v. Adams*,
532 U.S. 105 (2001)..........................................................................14

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006) ............................................................33

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ................................................................10

*CompuCredit v. Greenwood*,
132 S. Ct. 665 (2012).................................................................passim

*DeGaetano v. Smith Barney, Inc.*,
983 F. Supp. 459 (S.D.N.Y. 1997) ..................................................39

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980).......................................................32

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*
191 F.3d 198 (2d. Cir. 1999),
*cert. denied*, 531 U.S. 1069 (2001).......................14, 19, 29

*EEOC v. JBS USA, LLC*,
No. 10-cv-02103-PAB-KLM, 2011 U.S. Dist. LEXIS 145102
(D. Colo. Dec. 16, 2011)..........................................24

*EEOC v. United Air Lines, Inc.*,
515 F.2d 946 (7th Cir. 1975) .....................................24

*EEOC v. Waffle House, Inc.*,
534 U.S. 279 (2002)...............................................23

*Gen. Tel. Co. v. EEOC*,
446 U.S. 318 (1980)............................................23, 24

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)...........................................16, 18, 29

*Gilstrap v. Radianz Ltd.*,
443 F. Supp. 2d 474 (S.D.N.Y. 2006),
*aff'd*, 233 F. App'x 83 (2d Cir. 2007).............................34

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000)...............................................35

*Guyden v. Aetna. Inc.*,
544 F.3d 376 (2d Cir. 2008) .....................................30, 31

*Hadnot v. Bay, Ltd.*,
344 F.3d 474 (5th Cir. 2003) ....................................39

*Hall v. Alabama Ass'n of Sch. Bds.*,
326 F.3d 1157 (11th Cir. 2003) ..................................28

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)..........................................................................................36

*In re American Express Merchants' Litigation*,
   634 F.3d 187 (2d Cir. 2011) ...............................................................35, 36, 37

*In re Cotton Yarn Antitrust Litig.*,
   505 F.3d 274 (4th Cir. 2007) ............................................................................31

*In re: American Express Merchants' Litigation*,
   667 F.3d 204 (2d Cir. 2012) ........................................................17, 35, 36, 37

*Int'l Bhd. of Teamsters v. United States*,
   431 U.S. 324 (1977)..............................................................................23, 27, 28

*Karim v. AWB Ltd.*,
   No. 06-15400 (GEL), 2008 WL 4450265
   (S.D.N.Y. Sept. 30, 2008)
   *aff'd*, 347 W. App'x 714 (2d Cir. 2009)............................................................33

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006)...............................................................................38

*La Voice v. UBS Fin. Servs. Inc.*,
   No. 11 Civ. 230 (BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012)........31

*Maguire v. Sandy Mac, Inc.*,
   145 F.R.D. 50 (D.N.J. 1992)...............................................................................37

*Mathews v. Book-of-the-Month Club, Inc.*,
   62 F.R.D. 479 (N.D. Cal. 1974).........................................................................37

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973).....................................................................................28, 38

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
   473 U.S. 614 (1985).........................................................................................17

*Paladino v. Avnet Computer Techs., Inc.*,
   134 F.3d 1054 (11th Cir. 1998) .........................................................................39

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Philip Morris USA Inc. v. Scott*,
  131 S. Ct. 1 (2010) (Scalia, J., in Chambers),
  *cert. denied*, 131 S. Ct. 3057 (Jun. 27, 2011) ....................................................33

*Ragone v. Atlantic Video at Manhattan Ctr.*,
  595 F.3d 115 (2d Cir. 2010) ..................................................................39

*Robinson v. Metro-North Commuter Railroad Co.*,
  267 F. 3d 147 (2d Cir. 2001) ...................................................27, 38

*Rose v. Medtronics, Inc.*,
  107 Cal. App. 3d 150 (1980) ..........................................................37

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  170 F.3d 1 (1st Cir. 1999)..................................................................39

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  130 S. Ct. 1431 (2010)..................................................................33

*Shearson/American Express Inc. v. McMahon*,
  482 U.S. 220 (1987).................................................................17, 32

*Sprint/United Management Co. v. Mendelsohn*,
  552 U.S. 379 (2008).................................................................30

*St. Mary's Honor Ctr. v. Hicks*,
  509 U.S. 502 (1993).................................................................28

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  130 S. Ct. 1758 (2010).........................................................4, 15, 16

*Tucker v. Gonzales*,
  No. 03CIV3106 (LTS) (FM), 2005 WL 2385844
  (S.D.N.Y. Sept. 27, 2005)................................................26, 30

*United States v. Allegheny-Ludlum Indus., Inc.*,
  517 F.2d 826 (5th Cir. 1975),
  *cert. denied sub nom.*, *Nat'l Org. for Women, Inc. v. United States*,
  425 U.S. 944 (1976)................................................................24

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Velez v. Marriott PR Mgmt., Inc.*,
   590 F. Supp. 2d 235 (D.P.R. 2008) .................................................................26

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).............................................................................25, 27, 33

*White v. Shalala*,
   7 F.3d 296 (2d Cir. 1993) .................................................................................10

STATUTES

7 U.S.C.
   § 26(n)(2) ...........................................................................................................20

9 U.S.C.
   § 3.........................................................................................................................4
   § 4.........................................................................................................................4
   § 16(a)(1) ..............................................................................................................1

12 U.S.C.
   § 5518(b) .............................................................................................................20

15 U.S.C.
   § 1226(a)(2) ........................................................................................................20

28 U.S.C.
   § 2072(b) .............................................................................................................27

42 U.S.C.
   § 1981a(a)(1).......................................................................................................23
   § 1981a(c) ...........................................................................................................29
   §2000(e)-5(g)(2)(A)............................................................................................38
   § 2000a-5 .............................................................................................................24
   § 2000e-2 .............................................................................................................25
   § 2000e-5(f)(1).....................................................................................................25
   § 2000e-6 ......................................................................................................passim
   § 2000e-6(c).........................................................................................................22
   § 3601...................................................................................................................24
   §3614....................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page(s)**

Civil Rights Act of 1991,
   Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991) .........................12, 14, 18, 19

Title VII of the Civil Rights Act of 1964
   42 U.S.C. § 2000e *et seq.*.............................................................................passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ...............................................................................12, 23, 27, 33

Fed. R. Civ. P. 72(a)...................................................................................................4

## STATEMENT OF JURISDICTION

On April 28, 2011, Magistrate Judge James C. Francis of the Southern District of New York denied the motion of Defendants Goldman, Sachs & Co. and The Goldman Sachs Group (collectively, "Goldman Sachs") to enforce their arbitration agreement with Plaintiff Lisa Parisi ("Parisi"), a former Goldman Sachs Managing Director. (JA 167-200.[1]) Magistrate Judge Francis subsequently denied Goldman Sachs' motion seeking reconsideration of his decision in light of the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). (JA 207-219.)

Goldman Sachs timely objected to Magistrate Judge Francis's ruling to District Judge Leonard B. Sand. (*See* Docket No. 76.) On November 15, 2011, Judge Sand, by endorsed order and without opinion, affirmed the ruling and denied Goldman Sachs' motion to compel arbitration. (JA 314.)

On December 13, 2011, Goldman Sachs timely appealed. This appeal is properly before the Court under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1), which allows for immediate appeal of an order denying a motion to compel arbitration. Parisi has not cross-appealed.

---

[1] "JA" refers by page number to the "Joint Appendix" filed herewith.

## ISSUES PRESENTED FOR REVIEW

1.      Did the district court err in refusing to enforce the arbitration agreement, even though the court found that the agreement was validly entered into and covered the plaintiff's claims of employment discrimination and retaliation, and despite the United States Supreme Court's and other federal courts' holdings that arbitration agreements should be enforced according to their terms absent a "clear congressional command" prohibiting arbitration for that category of claims?

2.      Did the district court err in holding that the plaintiff has a "substantive statutory right" to litigate Title VII claims through the "pattern or practice" method of proof in a class action in federal court that vitiates her otherwise-enforceable agreement to arbitrate her individual claims?

## STATEMENT OF THE CASE

### I.      PARISI'S CLAIMS

Parisi is one of three named plaintiffs who filed a putative gender discrimination class action against Goldman Sachs.  (JA 221.)  In the Amended Complaint, dated September 14, 2011, Parisi alleges gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law ("NYCHRL").  (JA 221.)  She asserts gender discrimination and retaliation claims individually and gender discrimination claims on behalf of a putative class of allegedly similarly situated persons.  (JA 221.)

### II.     GOLDMAN SACHS' MOTION TO ENFORCE THE ARBITRATION AGREEMENT

In 2003, Goldman Sachs offered Parisi a promotion to Managing Director, one of the highest-level positions within Goldman Sachs, and Parisi accepted.  With the promotion, she received a salary increase and other perquisites in addition to the attendant prestige.  Parisi signed a Managing Director Agreement ("MD Agreement"), which contains a provision requiring both Parisi and Goldman Sachs to arbitrate any claims related to Parisi's employment with Goldman Sachs.

(JA 105; *see also* Statement of Facts, *infra*.)[2]  The arbitration provision does not provide for arbitration on a class basis.

On November 22, 2010, Goldman Sachs moved pursuant to the FAA, 9 U.S.C. §§ 3 and 4, to enforce Parisi's arbitration commitment.  (JA 97.) Goldman Sachs based its motion on the Supreme Court's holding in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), that arbitration must proceed individually unless the parties expressly agreed to class arbitration, which Goldman Sachs and Parisi had not.  (*See* JA 167.)

## III.    THE MAGISTRATE JUDGE'S REFUSAL TO COMPEL ARBITRATION

On April 28, 2011, Magistrate Judge Francis issued an order ("Order") denying Goldman Sachs' motion.  (JA 167-201.)[3]  The Magistrate Judge acknowledged that the arbitration commitment in Parisi's MD Agreement is fully "operational" (JA 180) and that it covers Parisi's employment discrimination and

---

[2]Magistrate Judge Francis referred to this agreement as the "Employment Agreement," but acceptance of the MD Agreement was not a condition of employment.  For most Managing Directors, including Parisi, the agreement is entered into when the individual is already an employee; he or she signs it in order to accept promotion to be a Managing Director.

[3] Magistrate Judge Francis held that the motion was "non-dispositive" for purposes of Rule 72(a) of the Federal Rules of Civil Procedure and therefore could be determined by him by memorandum and order rather than by report and recommendation.

retaliation claims, and he ruled that the Agreement does not allow for arbitration on a class basis.  (JA 167.)

Nevertheless, Magistrate Judge Francis refused to enforce the arbitration agreement.  Stating that he perceived a "substantive statutory right" in Title VII to pursue private disparate treatment claims through allegations of a "pattern or practice of discrimination," he ruled that because some district courts have held that "pattern or practice" allegations can be litigated only in a class action, Parisi's agreement to arbitrate on an individual basis is unenforceable.  (JA 168, 193, 194.)

## IV.    THE MAGISTRATE JUDGE'S DENIAL OF RECONSIDERATION IN LIGHT OF *CONCEPCION*

Goldman Sachs moved for reconsideration in light of the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), which held that a state rule barring enforcement of arbitration agreements containing class arbitration waivers frustrated the purpose of the FAA and was preempted.  (JA 204.)  Goldman Sachs argued that the district court's refusal to enforce Parisi's arbitration agreement imposed the very result *Concepcion* rejected: invalidation of an otherwise-valid arbitration agreement because it does not allow for class arbitration.  (JA 209.)  Goldman Sachs also urged reconsideration of Magistrate Judge Francis's conclusion that Title VII provides a substantive statutory right to bring a "pattern or practice" claim, arguing that for private parties

-5-

"pattern or practice" is merely a method of proving some Title VII claims, not a separate cause of action authorized by the statute.

Magistrate Judge Francis denied Goldman Sachs' motion for reconsideration, distinguishing *Concepcion* on the grounds that it held a state law rule preempted, whereas he perceived a federal statutory bar to enforcement of Parisi's arbitration commitment.  (JA 209.)

## V.    THE DISTRICT JUDGE'S ADOPTION OF THE MAGISTRATE JUDGE'S ORDER

Goldman Sachs timely objected to Judge Sand, arguing that Magistrate Judge Francis's Order and subsequent denial of reconsideration were contrary to *Concepcion* and basic principles of federal arbitration law (*see* Docket No. 76), and that Magistrate Judge Francis had incorrectly concluded that Parisi had a substantive statutory right to pursue a Title VII class action.  (JA 294.)  After briefing and argument on November 15, 2011, Judge Sand, by endorsed order and without opinion, refused to modify Magistrate Judge Francis's decision and denied Goldman Sachs' motion to compel arbitration.  (JA 314.)

Goldman Sachs timely appealed on December 13, 2011.  Parisi has not cross-appealed.

-6-

## STATEMENT OF THE FACTS

### I.    THE PARTIES

Goldman, Sachs & Co. is a financial services firm engaged primarily in the investment banking, investment management and securities businesses. (*See* Docket No. 76, p. 2.) The Goldman Sachs Group, Inc. is the indirect parent of Goldman, Sachs & Co. (JA 108, 111.)

Goldman Sachs hired Parisi in 2001 as a Vice President assigned to the firm's Goldman Sachs Asset Management area. (JA 168.) When hired, Parisi held an M.B.A. degree and had more than 15 years of professional experience in the asset management business. Goldman Sachs promoted Parisi to Managing Director in 2003. (JA 168.) Parisi's employment with Goldman Sachs continued until November 2008, when her employment was terminated as part of an extensive firm-wide reduction in force required by the global economic crisis. (JA 169.)

Upon becoming a Managing Director, Parisi and her fellow Managing Directors were paid an annual base salary of $300,000. (JA 203.) Parisi's total annual compensation, including both salary and bonus, substantially exceeded that amount. (JA 202-203.)

## II.    TERMS OF PARISI'S MANAGING DIRECTOR AGREEMENT

When Parisi was promoted to Managing Director, she, like others offered that distinction, signed an MD Agreement setting forth certain terms and conditions of her employment.  (JA 100-107.)[4]  Section 4 of the MD Agreement sets forth Parisi's commitment to arbitrate all employment-related disputes:

> [A]ny dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration in New York City before, and in accordance with the rules then obtaining of, the New York Stock Exchange, Inc. ("*NYSE*") or if the matter is not arbitrable before the NYSE, the National Association of Securities Dealers ("*NASD*").  If both the NYSE and the NASD decline to arbitrate the matter, the matter will be arbitrated before the American Arbitration Association ("*AAA*") in accordance with the commercial arbitration rules of the AAA.  You agree that any arbitration decision and/or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

(JA 105.)

Parisi's MD Agreement defines "Employment Related Matters" as "matters arising out of or relating to or concerning … your … employment … or the termination thereof, or otherwise concerning any rights, obligations or other

---

[4] Goldman Sachs does not maintain a general employment arbitration policy for all of its employees.  Other than arbitration required by the rules of self-regulatory organizations, arbitration of employment-related matters is limited to those promoted to high-level positions such as Managing Director.  Each Managing Director signs an agreement to confirm the promotion, which includes the arbitration commitment.

aspects of your employment relationship"—in other words, all matters directly relating to Parisi and her employment relationship with the firm.  (JA 104.)  The MD Agreement also contains an integration clause:

> This Agreement represents the entire understanding between the parties with respect to the matters set forth herein; provided, however, that your employment will also be subject to various Firm policies and guidelines, including those stated in the applicable Employee Handbook as amended from time to time….  In the event of any conflict between the provisions of this letter and the provisions of the applicable Employee Handbook or any prior agreement with the Firm, the provisions of this letter will prevail.

(JA 106.)

Parisi's obligations under the MD Agreement—including the obligation to arbitrate covered disputes—explicitly survive the termination of her employment.  (JA 106.)

## <u>STANDARD OF REVIEW</u>

1.     The district court's refusal to enforce the arbitration agreement is reviewed *de novo*.  *See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) ("We review *de novo* a judgment of the district court staying or compelling arbitration."); *Arciniaga v. GMC*, 460 F.3d 231, 234 (2d Cir. 2006) (same).

2.     The district court's ruling that the plaintiff has a substantive right to bring a Title VII class action utilizing the "pattern and practice" method of proof is reviewed *de novo*.  *See White v. Shalala*, 7 F.3d 296, 299 (2d Cir. 1993) ("We review *de novo* whether the district court correctly interpreted the statute.").

## SUMMARY OF ARGUMENT

Earlier this year, the Supreme Court once again affirmed that the FAA "requires courts to enforce agreements to arbitrate according to their terms. . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citation omitted). The Magistrate Judge's refusal to enforce Parisi's agreement to arbitrate was not based on any congressional command displacing the FAA, as the Supreme Court's rulings require, but rather on an unsupported interpretation of judicial decisions concerning a method of proof under Title VII. The Magistrate Judge decided that Title VII creates by implication a substantive "pattern or practice" cause of action for private individuals that can be pursued only through a class action, and that this supposed right is sufficient to upend the strong federal policy in favor of arbitration often and emphatically applied by this Court.

This decision creates a wholesale exemption from arbitration for any Title VII class action in which the plaintiff alleges a "pattern or practice." In doing so, the decision below ignored the Supreme Court's directives and reverted to the "judicial hostility towards arbitration that prompted the FAA." *Concepion*, 131 S. Ct. at 1747. The Supreme Court has made clear that such hostility, which has "manifested itself in a great variety of devices and formulas declaring arbitration against public policy," must end. Title VII does not create the "substantive

-11-

statutory right" the Magistrate Judge perceived, and far from countermanding the FAA, Congress amended Title VII in 1991 expressly to encourage arbitration: "[T]he use of alternative means of dispute resolution, including … arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title."  Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991).

Title VII refers to pattern or practice actions only once, in Section 707, which authorizes the Attorney General or the EEOC—not private plaintiffs—to bring lawsuits to remedy what the statute refers to as a "pattern or practice of resistance" to the substantive statutory rights described elsewhere in Title VII. Section 707 creates no rights for individuals, who must proceed under Section 706.

Government lawsuits under Section 707 are designed to serve a broad law enforcement purpose; they need not comply with Rule 23, and individual plaintiffs may not intervene in them, unlike actions brought under Section 706. Although this Court has held that in a properly certified class action private plaintiffs may borrow the pattern or practice method of proof developed in government litigation to prove systemic discrimination against the class, this judicial use of a method of proof does not endow private plaintiffs with any right to litigate a class action to challenge an alleged "pattern or practice" of discrimination, as the District Court erroneously ruled.

-12-

The Magistrate Judge relied on a number of decisions refusing to enforce arbitration where necessary to "vindicate statutory rights." Those cases provide no ground for exempting an entire category of statutory claims from arbitration; rather, each dealt with a particular fact situation in which an individual plaintiff had shown that, as a practical matter, arbitration was too costly to allow an effective remedy, or that the particular terms of the specific arbitration agreement at issue did not allow the claimant a full statutory remedy. Here, the Magistrate Judge's ruling was not based on the particulars of Parisi's situation, nor could it have been. The arbitration agreement between Goldman Sachs and Parisi contains no barriers to Parisi's ability to obtain full and complete relief for her individual claims. Parisi earned hundreds of thousands of dollars a year; she claims substantial damages, saying that similarly situated men were earning double her compensation, and she can recover compensatory and punitive damages in addition to full attorneys' fees and costs if she prevails. Contrary to the distinguishable decisions cited by Plaintiffs, enforcement of Parisi's commitment to arbitrate those claims plainly would not deprive her of any aspect of the protection of federal law.

## ARGUMENT

### I.    THE FAA MANDATES ENFORCEMENT OF THE ARBITRATION AGREEMENT.

#### A.    Parisi Has a Valid and Enforceable Arbitration Agreement.

The Magistrate Judge made three correct rulings that should have led the court to compel individual arbitration of Parisi's claims:

- The Magistrate Judge correctly recognized that Parisi's arbitration agreement  encompasses her Title VII and NYCHRL claims.  (JA 180 ("[I]n this case there is an operational agreement to arbitrate. Because that agreement applies to all 'Employment Related Matters,' the plaintiff's claims of gender-based employment discrimination and retaliation are encompassed by the clause.").)

- The Magistrate Judge correctly concluded that Title VII and NYCHRL claims are fully arbitrable.  "It is well established that Congress intended claims under Title VII to be arbitrable."  (JA 186.) (citing *Circuit City Stores v. Adams*, 532 U.S. 105, 123 (2001)).  This Court so held long ago, *Desiderio*, 191 F.3d at 204-05, and the text of Title VII itself is in accord.  *See, e.g.,* Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991) ("[T]he use of alternative means of dispute resolution, including … arbitration, is encouraged to resolve disputes arising

-14-

under the Acts or provisions of Federal law amended by this title.").

- The Magistrate Judge correctly ruled that Parisi's MD Agreement does not authorize class arbitration and is limited to individual claims. (JA 181-186.)  He held that under the Supreme Court's decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758 (2010), and New York contract law, Goldman Sachs cannot be compelled under the MD Agreement to submit to class arbitration, and that Parisi, by entering into the MD Agreement, voluntarily waived any opportunity to arbitrate her claims on a class basis. (JA-183-186.)[5]

Nevertheless, the Magistrate Judge ruled that Parisi—and by extension any other putative class plaintiff whose complaint recites an alleged "pattern or practice of discrimination" —need not arbitrate her claims at all.  This was error.  The FAA "requires courts to enforce agreements to arbitrate according

---

[5] Magistrate Judge Francis previously had ruled that the MD Agreement unambiguously did not permit class arbitration, and therefore no discovery was necessary to discern the arbitration agreement's meaning. (JA 164-165 ("In this case, the absence of a term in the [MD] Agreement addressing class arbitration creates no inherent ambiguity…. And, because the [MD] Agreement is unambiguous [in not permitting class arbitration], extrinsic evidence is inadmissible; the discovery propounded by the plaintiffs therefore seeks irrelevant information").)  Parisi did not object to this ruling.

to their terms … unless the FAA's mandate has been 'overridden by *a contrary congressional command*.'"  *CompuCredit Corp.*, 132 S. Ct. at 669 (citations omitted) (emphasis added); *and see id*., at 675 ("Claims alleging a violation of the statute … are generally subject to valid arbitration agreements unless Congress evinces a contrary intent in the text, history or purpose of the statute.") (Sotomayor, J., concurring).  *See also Concepcion,* 131 S. Ct. at 1748 ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms."); *Stolt-Nielsen*, 130 S. Ct. at 1758.[6]

The Supreme Court has held that a wide variety of federal statutory rights can be vindicated through individual arbitration proceedings, including employment discrimination rights.  More than 20 years ago, in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Court approved arbitration of age discrimination claims, expressly rejecting the contention that employment discrimination claims are exempt from arbitration on public policy grounds.  As this Court recently noted, in *Gilmer* the Supreme Court "rejected plaintiff's contention that 'arbitration procedures cannot further the purposes of the ADEA

---

[6] The decision below, rendered before *CompuCredit*, treated *Concepcion* as limited to the context of federal preemption of state law.  *CompuCredit*'s explicit holding concerning the arbitration of federal statutory claims makes clear that *Concepcion* applies to the FAA in all contexts, not merely those involving state-law rights.  *See* 132 S. Ct. at 668-69.

because they do not provide for broad equitable relief and class actions.'" *In re: American Express Merch. Litig.* ("*Amex III*"), 667 F.3d 204, 215 (2d Cir. 2012) (quoting *Gilmer*, 500 U.S. at 32.)

### B. There Is No "Congressional Command" That Any Private Title VII Claim Cannot Be Arbitrated.

The *CompuCredit* decision's emphasis on the necessity of a "congressional command" to displace the FAA is not new. The Supreme Court long ago made clear that *only Congress* can exempt from arbitration an entire class of case, and that plain evidence of Congressional intent to do so is required:

> [I]f Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. *Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* 473 U.S. 614, 628 (1985) (emphasis added, citation omitted). In *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227 (1987), the Court further held that "[t]he burden is on the party opposing arbitration … to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."

The Magistrate Judge ignored the Supreme Court's directives. Instead, he ruled—contrary to the text of Title VII—that "federal law creates a

-17-

substantive right to be free from a 'pattern or practice' of discrimination by an employer [and] absent the ability to arbitrate on a class basis, mandating arbitration would preclude the plaintiff from enforcing this right."  (JA 208-09, citing Order, JA 191-195.)    In reaching this erroneous conclusion, the Magistrate Judge identified no "congressional command" displacing the FAA—as he was required to do—but rather relied erroneously on a judicially developed method of proof for trial of class actions.

Nothing in Title VII expresses any congressional command to preclude arbitration of any Title VII claims, whether based on "pattern or practice" allegations or otherwise.    To the contrary, Congress specifically approved arbitration of Title VII claims.  The Civil Rights Act of 1991, which was enacted six months after *Gilmer*, rejected the contention that employment discrimination claims were excluded from the FAA's mandate, expressly stating that "the use of alternative means of dispute resolution, including … arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title."  Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071 (1991).[7]  Further, Congress has repeatedly *rejected* proposals to prohibit arbitration

---

[7] The Magistrate Judge noted that the Act's endorsement of arbitration is preceded by the precatory phrase "where appropriate and to the extent authorized by law" (JA 186-187.) This Court in *Desiderio* refused to endow that phrase with any

(continued...)

of employment and civil rights claims.  In each of the past three Congresses a bill called the Arbitration Fairness Act was proposed that would have precluded enforcement of pre-dispute arbitration agreements covering employment and civil rights claims, S. 931 111th Cong. § 402(a); S. 987, 112th Cong. § 402(a); S. 1782 110th Cong. § 402(a), and a separate bill that would have rendered unenforceable any agreement requiring arbitration of any federal claim also was introduced in 2008.  S. 2554 110th Cong. § 423(a).  None of these bills even made it to the floor of either House of Congress.

As the Supreme Court has emphasized, Congress knows how to preclude arbitration when it wants to do so.  "Congress is fully equipped to 'identify any category of claims as to which agreements to arbitrate will be held unenforceable,'" *14 Penn Plaza LLC*, 129 S. Ct. at 1472 (2009) (citation omitted), and, as this Court has observed, "the drafters of Title VII and the amendments introduced in the Act were well aware of what language was required for Congress to evince an intent to preclude a waiver of judicial remedies." *Desiderio*, 191 F.3d at 205.  In *CompuCredit*, the Supreme Court rejected an argument that the FAA

---

(...continued)

significance, ruling "that the text of § 118 evinces a plain Congressional purpose of *encouraging arbitration of Title VII claims and not one of precluding such arbitration*."  191 F.3d at 204-05 (emphasis added, citations omitted); *see also 14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1465 n.6 (2009) (reaching the identical conclusion).

was overridden by the federal Credit Repair Organizations Act, which requires a

notice to consumers advising them that they have a non-waivable "right to sue":

> "[h]ad Congress meant to prohibit these very common
> provisions [*i.e.*, arbitration provisions] in the CROA, it
> would have done so in a manner less obtuse than what
> respondents suggest. *When it has restricted the use of
> arbitration in other contexts, it has done so with a clarity
> that far exceeds the claimed indications in the CROA*."

132 S. Ct. at 672 (emphasis added).  The Court cited examples of prohibitions or

limitations on arbitration adopted by Congress in federal statutes, each of which is

clear and distinct.  *Id.*

- 7 U.S.C. § 26(n)(2):  "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section";

- 15 U.S.C. § 1226(a)(2):  "[n]otwithstanding any other provision of law, whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy"; and

- 12 U.S.C. § 5518(b):  granting the newly created Consumer Financial Protection Bureau authority to regulate predispute arbitration agreements in contracts for consumer financial products or services.

Nothing of the sort appears in Title VII.

**C.    Judicial Decisions Do Not Create a Congressional Exclusion from Arbitration.**

Far from identifying any "congressional command" displacing the FAA, the district court accepted the Magistrate Judge's inferences drawn from judicial decisions – inferences not based in any statutory text or legislative history:

- First, the Magistrate Judge held that an individual has a "statutory right to be free from a pattern or practice of discrimination;"

- Second, the Magistrate Judge cited Southern District decisions in which plaintiffs were not permitted to litigate a "pattern or practice" in individual cases, and assumed that these decisions would be applied by an arbitrator; and

- Finally, based on these assumptions, the Magistrate Judge concluded that Parisi has an inalienable right to file a class action in federal court if "pattern or practice" is alleged.

This ignored the Supreme Court's directive that the FAA's mandate must be heeded absent a "contrary congressional command."  With respect to pattern and practice, it was faulty reasoning at every step.  A "substantive statutory right" to pursue a pattern or practice case would of necessity have to be created by Congress, by statute.  It was error for the court below to invent one.

1.     <u>In Private Cases "Pattern or Practice" Is a Judicially-Created Method of Proof, Not a Congressionally-Created Substantive Statutory Right.</u>

"Pattern or practice" actions are the exclusive province of the Government, in proceedings under Section 707 of Title VII.  Section 706, which authorizes a private right of action, says nothing about any "pattern or practice" action.  "Pattern or practice" allegations, when asserted in private actions, do not constitute a separate or special category of claim endowing plaintiffs with substantive rights different from those of all other private Title VII plaintiffs; rather, in private actions, "pattern or practice" represents nothing more than a method of proof that courts have borrowed, to facilitate class action trials of Title VII claims.

a.     <u>Pattern or Practice Actions Can be Brought Only by the Government.</u>

Title VII refers to pattern or practice actions only once, in Section 707, 42 U.S.C. § 2000e-6, which authorizes the Attorney General—*not private plaintiffs*—to bring lawsuits to remedy what the statute refers to as a "pattern or practice of resistance to" the substantive statutory rights described elsewhere "in this subchapter," *i.e.*, in Title VII.[8]  As the Supreme Court has confirmed, "[t]he plaintiff in a pattern-or-practice action is the Government, and its initial burden is

---

[8] This power was later partially transferred to the EEOC.  42 U.S.C. § 2000e-6(c).

to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 (1977).

Government suits under Section 707 are entirely distinct from the individual claims Title VII authorizes: in contrast to individual claims, which must be brought under Section 706, government suits do not require exhaustion of administrative remedies,[9] do not have to comply with the provisions of Federal Rule of Civil Procedure 23 ("Rule 23"),[10] do not allow for the recovery of compensatory or punitive damages,[11] and are expressly not foreclosed by private arbitration agreements.[12]  These are law enforcement suits, consistent with broad government enforcement powers under various federal anti-discrimination statutes designed to prevent a "pattern or practice of resistance" to their commands; it is apparent why arbitration of such claims would not be appropriate.  *See, e.g.,*

---

[9] *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 331 (1980) (in EEOC enforcement action, "[a]ny violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable").

[10] As the Supreme Court observed in *Teamsters,* "[t]he plaintiff in a pattern-or-practice action is the Government," 431 U.S. at 360, and because in such cases the Attorney General is exercising his or her *statutory* right, Rule 23 does not apply. *Gen. Tel.*, 446 U.S. at 324.

[11] *See* 42 U.S.C. § 1981a(a)(1) (expanding remedies available for suits under § 706 but not under § 707).

[12] *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002).

42 U.S.C. § 2000a-5 (Title II of the Civil Rights Act of 1964) (creating bifurcated government/private enforcement mechanism for public accommodation discrimination with the Attorney General authorized to file broadly based suits challenging a "pattern or practice of resistance" to civil rights); 42 U.S.C. §§ 3601, 3614 (Fair Housing Act of 1968) (same); and *see Gen. Tel. Co.,* 446 U.S. at 327 (EEOC lawsuits are "guided by 'the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement'") (citation omitted)).

Government suits under Section 707 are designed "to provide the government with a swift and effective weapon to vindicate the broad public interest in eliminating unlawful practices, at a level which may or may not address the grievances of particular individuals."  *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 843 (5th Cir. 1975), *cert. denied sub nom.*, *Nat'l Org. for Women, Inc. v. United States*, 425 U.S. 944 (1976); *see also EEOC v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2011 U.S. Dist. LEXIS 145102 (D. Colo. Dec. 16, 2011) (no private right of intervention in EEOC Section 707 suit); *Allegheny-Ludlum*, 517 F.2d at 844 (same); *EEOC v. United Air Lines, Inc.*, 515 F.2d 946, 949 (7th Cir. 1975) (same).  Indeed, while Congress granted private parties the right to intervene in government-initiated suits under Section 706 brought on

behalf of individuals, *see* 42 U.S.C. § 2000e-5(f)(1), there is no private right of intervention in government pattern or practice lawsuits under Section 707.

Although Congress has amended Title VII on several occasions, it has never given private plaintiffs the right to bring (or even intervene in) Section 707 suits challenging a pattern or practice of resistance to the statute. A "substantive statutory right" to pursue a pattern or practice case would of necessity have to be created by Congress, by statute. It was error for the court below to invent one. *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (courts may not invent new claims, "no matter how desirable that might be as a policy matter").

                    b.    <u>Individual Claims Must Be Brought Under Section 706.</u>

Section 706 of Title VII says nothing about "pattern or practice" actions; the section grants *individuals* the ability to vindicate their individual right to be free from employment discrimination by bringing their own claims of discrimination. *See* 42 U.S.C. § 2000e-2 (making it unlawful for an employer "to discriminate against any *individual*" or "to deprive any *individual* of employment opportunities") (emphasis added).[13]

Federal courts in this Circuit and elsewhere have repeatedly refused individual plaintiffs the right to bring pattern or practice causes of action; *i.e.*,

---

[13] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

contrary to the District Court's ruling, there can be no "substantive statutory right" to do so.  For example, in *Tucker v. Gonzales*, No. 03CIV3106 (LTS) (FM), 2005 WL 2385844, at *5 (S.D.N.Y. Sept. 27, 2005), the court dismissed a plaintiff's attempt to bring a "pattern-or-practice" cause of action, holding that "pattern or practice is merely a method of proving prohibited disparate treatment. . . .  None of the cases cited by the parties recognizes a cause of action for 'pattern or practice' discrimination [as] separate and distinct from a claim that an employer deliberately mistreated employees on racial or other prohibited grounds."  *See also Celestine v. Petroleos de Venezuella S.A.*, 266 F.3d 343, 355 (5th Cir. 2001) (a pattern-or-practice claim is not a "separate and free-standing cause of action") (internal quotation and citation omitted); *Velez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 241 (D.P.R. 2008) ("pattern-or-practice discrimination does not constitute an independent cause of action but rather an additional procedural vehicle available for establishing disparate discriminatory treatment").

> In private litigation, the pattern or practice method of proof does not confer on putative class action plaintiffs a favored or preferential status compared to plaintiffs in individual cases.  Rather, the phrase "pattern or practice" means something quite different in private litigation.   There, it denotes merely *a procedural mechanism* by which a Title VII claim can be proven on a class basis, "another means by which a Title VII plaintiff's initial burden of proof can be met,"

*Teamsters*, 431 U.S. at 359, as opposed to a separate and distinct cause of action. In *Robinson v. Metro-North Commuter Railroad Co.*, 267 F. 3d 147, 158 (2d Cir. 2001), in a section entitled "Proving Title VII Claims," this Court held that in a properly certified class action plaintiffs may use the pattern or practice method of proof used in government litigation to prove systemic discrimination against the class. But a private plaintiff's ability to borrow a method of proof from Section 707 cases, to facilitate the conduct of a class action, does not transform private lawsuits under Section 706 into statutory "pattern or practice of resistance" causes of action, under Section 707 any more than it allows a private party to avoid application of Rule 23 to her claims.[14]

The pattern-or-practice *method of proof*, which courts borrowed to use in private class actions and which focuses upon systemic treatment of members of a protected group, first evolved in Section 707 litigation as an alternative to the framework for establishing a *prima facie* case of discrimination announced by the

---

[14] The proposition that Title VII embodies a "substantive right" to pursue a class-based "pattern or practice" claim also runs afoul of the Rules Enabling Act, which provides that no provision of the Federal Rules can "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). If Title VII created a substantive statutory right to litigate a "pattern or practice claim" on a class basis, it would be impermissible for a court to restrict or deny that "right" through application of Rule 23 standards. Yet the Supreme Court has repeatedly held that Rule 23 applies with full force in Title VII claims, most recently in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), which confirms that the requirements of Rule 23 apply without qualification to discrimination class actions under Title VII.

Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   In

*Teamsters,* the Supreme Court rejected the argument that the *McDonnell Douglas*

framework had to be applied to every Title VII claim, and approved the pattern-or-

practice method of proof, emphasizing that the *McDonnell Douglas* and pattern or

practice frameworks are simply different procedural methods of establishing a

*prima facie* case under Title VII.   The Court explained that the "importance of

*McDonnell Douglas* lies, not in its specification of the discrete elements of proof

there required, but in its recognition of *the general principle that any Title VII*

*plaintiff must carry the initial burden of offering evidence adequate to create an*

*inference that an employment decision was based on a discriminatory criterion*

*illegal under the Act.*"   431 U.S. at 358 (emphasis added).   Like the *McDonnell*

*Douglas* framework, the pattern-or-practice method of proof is not "an end in

itself."   *Hall v. Alabama Ass'n of Sch. Bds.*, 326 F.3d 1157, 1167 (11th Cir. 2003)

("because the *McDonnell Douglas* analysis is only a 'procedural device,' it should

not be applied too rigidly; nor should it be viewed as an end in itself") (citing *St.*

*Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 521 (1993)).

   Further, even if the statutory right posited by the Magistrate Judge

existed, there would be no basis for concluding that such a right would trump the

FAA's mandate to enforce arbitration agreements.   In *CompuCredit* and elsewhere,

the Supreme Court has made clear that far more than the existence of a statutory

right is required to override the strong congressional preference for arbitration. Indeed, Title VII expressly gives individuals the statutory right to have their damage claims heard by a jury, 42 U.S.C. § 1981a(c), yet there is no doubt that this statutory right can be waived in an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (ADEA case); *Desiderio*, 191 F.3d 198 (*Gilmer* applies to Title VII claims), *cert. denied*, 531 U.S. 1069 (2001). When an individual agrees to arbitrate, and thus waives the right to have a jury hear her claims, she does not surrender the substantive right to be free from discrimination, but only substitutes one procedural mechanism for vindicating that right for another.  The same is true here; as Magistrate Judge Francis found, Parisi's agreement to arbitrate "operates as an implied waiver of the plaintiff's class claims in this action." (JA-183-186.)  Refusal to enforce this waiver was error.

2.    The Arbitrator Can Determine the
Admissibility of "Pattern or Practice" Proof.

The Magistrate Judge's assumption that the arbitrator would not permit Parisi to introduce evidence of an alleged pattern or practice was both premature and wrongly reasoned.  He relied upon some decisions refusing to allow individual plaintiffs to adduce class-based proof  in individual cases as a reason why Parisi need not arbitrate her claim, *see* 785 F. Supp. 2d at 408-09 (and cases there cited).  But the evidence to be admitted in arbitration of Parisi's claims will

-29-

be determined by the arbitrator, who certainly is empowered to admit such evidence if relevant.  Declining to permit "pattern or practice" evidence has not been a uniform rule even in court proceedings, *see Tucker,* 2005 WL 2385844, at *4-5 (noting that there is no barrier to a court or an arbitrator in an individual case hearing evidence typically presented in a class action), and neither this Court nor the Supreme Court has ever established any *per se* rule that any particular form of evidence is inadmissible in an individual case.  Indeed, the admissibility of evidence concerning the treatment of other individuals—the essence of proof of a pattern or practice of discrimination—was specifically addressed by the Supreme Court in *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008), where the Court held that evidence of the treatment of others in an individual employment discrimination case "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."  552 U.S. at 388.

This Court has been clear that mere speculation as to how an arbitrator might rule in a given case—like the Magistrate Judge's speculation below—provides no ground to refuse enforcement of an arbitration commitment.  In *Guyden v. Aetna. Inc.*, 544 F.3d 376 (2d Cir. 2008), this Court upheld an arbitration agreement that contained specific limits on the scope of discovery, which the party challenging enforcement claimed would preclude the ability to

-30-

obtain substantive relief.  This Court held that the scope of discovery would be a

matter for the arbitrator to decide and that, absent proof to the contrary, an

arbitration agreement cannot be held invalid based on speculation that the

arbitrator might deny discovery.  *Id.* at 387; *see also In re Cotton Yarn Antitrust

Litig.*, 505 F.3d 274 (4th Cir. 2007) (noting that plaintiffs cannot satisfy their

burden in opposing arbitration merely by speculating about difficulties that might

arise in the arbitral forum from the restricted discovery authorized by the

arbitration agreement); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 81-82 (D.C.

Cir. 2005) (decisions about which discovery tools may be used, and in what

manner, are for the arbitrator; "the party resisting arbitration on the ground that [its

terms] interfere with the effective vindication of statutory rights bears the burden

of showing the likelihood of such interference," and "speculation about what *might*

happen in the arbitral forum is plainly insufficient to render the agreement to

arbitrate unenforceable") (emphasis added). [15]

---

[15] Magistrate Judge Francis speculated that even if such evidence were admissible
in Parisi's individual arbitration, Parisi might have difficulty obtaining such
evidence in discovery and the cost of doing so might be prohibitive.  785 F. Supp.
2d at 410, n. 6.  No evidence was presented to this effect, and speculation is not a
basis for refusing to order arbitration, as the cases cited in the text establish.  In
fact, the evidence of Parisi's extremely high compensation as a Managing Director,
as well as the availability of attorney's fees and costs if she were to prevail,
contradicts any such speculation.  *See La Voice v. UBS Fin. Servs. Inc.*, No. 11
Civ. 230 (BSJ)(JLC), 2012 WL 124590 (S.D.N.Y. Jan. 13, 2012) (holding that the

(continued...)

Coupling the notion that Title VII silently creates an individual substantive right to litigate a "pattern or practice claim" with assumptions concerning what evidence might or might not be allowed in arbitration is piling error upon error, and does not begin to meet the burden of proving "that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon,* 482 U.S., at 227.

### 3. Title VII Does Not Guarantee Individual Plaintiffs an Inalienable Right to Litigate a Class Action.

The class action device and the pattern or practice method of proof are procedural mechanisms, not substantive rights. The only "substantive statutory right" presented in this case is Plaintiff Parisi's right to be free from gender-based employment discrimination and retaliation, and there is no question that she can vindicate that right fully in an individual arbitration.

The Magistrate Judge acknowledged that Parisi had no right to use the class action device once she agreed to arbitrate her claims, but then brought about the same result. Class actions are procedural devices for consolidating similar claims, nothing more, and are available only where a forum allows such procedures. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980)

(...continued)
"practical effect of enforcement" of the arbitration agreement "would not 'preclude'" plaintiff from exercising his statutory rights, after reviewing estimated damages claim and availability of attorney's fees).

-32-

("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.").

The Supreme Court and this Circuit have emphasized that Rule 23 and the class actions it describes "really regulat[e] procedure—the judicial *process* for enforcing rights and duties recognized [elsewhere] by substantive law." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1442 (2010) (emphasis added; citation omitted); *see also Dukes*, 131 S. Ct. at 2550 (describing a class action as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only"); *Philip Morris USA Inc. v. Scott,* 131 S. Ct. 1, 4 (2010) (Scalia, J., in Chambers) (referring to class actions as a "procedural device"), *cert. denied*, 131 S. Ct. 3057 (Jun. 27, 2011); *Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (similarly referring to a class action as a "procedural device"); *Karim v. AWB Ltd.*, No 06-15400 (GEL), 2008 WL 4450265, at *5 n.4 (S.D.N.Y. Sept. 30, 2008) ("[A] plaintiff may not use the procedural device of a class action to bootstrap himself into standing he [otherwise] lacks.") (quotation and citation omitted), *aff'd*, 347 F. App'x 714 (2d Cir. 2009).

A litigant does not have the right to litigate in a particular forum merely because she believes that forum provides procedural guarantees that seem preferable to her; a litigant who has committed to litigate in one forum must utilize

-33-

the procedures available in that forum. Indeed, this Court has held that an individual may not bring an action in federal court, even when the consequence is that the case will be brought in a forum where the class action mechanism is unavailable. *See Aguinda v. Texaco, Inc.*, 303 F.3d 470, 478, 480 (2d Cir. 2002) (Ecuador was "an effective alternative forum" even though class action mechanism was unavailable; affirming dismissal on *forum non conveniens* grounds); *see also Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 482, 491 (S.D.N.Y. 2006) (granting dismissal on *forum non conveniens* grounds; England was an adequate forum even though English courts did not permit class actions; "It is well-established … that the unavailability of such procedural mechanisms as class actions … does not render a foreign forum inadequate as a matter of law."), *aff'd*, 233 F. App'x 83 (2d Cir. 2007). If proceeding as a class representative were a statutory right, this sort of discretionary dismissal would not be permissible.

## II.   FEDERAL DECISIONS ADDRESSING CHALLENGES TO PARTICULAR ARBITRATION AGREEMENTS DO NOT SUPPORT THE CATEGORICAL EXCLUSION FOUND HERE.

The Magistrate Judge based his decision in large part on what he called the "federal substantive law of arbitrability," but the decisions he cited provide no support for his decision categorically to exempt from the coverage of the FAA all Title VII cases in which "pattern or practice" is alleged. The decisions in which courts have refused to compel arbitration based on a "vindication of

statutory rights" theory have carefully limited their findings to particular fact patterns in which arbitration was shown to be, as a practical matter, inconsistent with rights established by a statutory scheme.  Courts have never exempted an entire category of cases from arbitration on that ground, as the Magistrate Judge did here.  The Magistrate Judge vastly and erroneously overextended this case-by-case concept, creating a categorical exception from arbitration of an entire set of Title VII cases, in the absence of any "congressional command" to do so.

In *In re American Express Merchants' Litigation*, 634 F.3d 187 (2d Cir. 2011), relied upon heavily by the Magistrate Judge, this Court confirmed that an individualized showing was required to demonstrate that arbitration would have prevented the plaintiff from vindicating its rights under the antitrust laws so as to make a class action waiver unenforceable:

> [W]e do not conclude here that class action waivers in arbitration agreements are per se unenforceable.  We also do not hold that they are per se unenforceable in the context of antitrust actions.  Rather, *we hold that each case which presents a question of the enforceability of a class action waiver in an arbitration agreement must be considered on its own merits, governed with a healthy regard for the fact that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements*."

*Id.* at 199 (emphasis added, citation omitted); *accord Amex III*, 667 F.3d at 219 (using identical language).  In *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000), recognized by this Court as the foundational and controlling case for

-35-

this doctrine in *American Express*, 634 F.3d at 197, *and see Amex III*, 667 F.3d at 216, the Supreme Court held that consumer arbitration agreements imposing potentially prohibitive costs upon litigants were not categorically unenforceable, but rather only that an individual litigant could challenge the enforcement of her own agreement by proving that it would be prohibitively expensive for her to litigate her own claim. In the *American Express* case, the putative plaintiffs submitted extensive and unrebutted evidence that because of the small value of their claims, it was economically prohibitive for them to vindicate their rights in arbitration. *See* 634 F.3d at 191-92; *see also Amex III*, 667 F.3d at 216.

Parisi made no such showing. The record reflects that Parisi was a Managing Director of Goldman Sachs, a senior executive position with a base salary of $300,000 per year, plus bonus. Given the amounts at issue—Parisi claims that the compensation paid to comparably situated men was double her own—her claims of compensation discrimination and denial of promotion are vastly different in magnitude from the "negative value" claims of the small merchants in the American Express litigation. Parisi can seek, in addition to full back pay and the $300,000 in compensatory and punitive damages allowed her under Title VII, uncapped punitive and compensatory damages under the New York City Human Rights Law. She also is entitled to attorney's fees and costs if she prevails. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (prevailing

plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust").  Indeed, the provision for an attorney's fee award has been repeatedly held to eliminate the need for the class action device by providing an incentive for attorneys to litigate individual cases.[16]  Parisi presented the court below with no evidence establishing that she could not afford to litigate her claim in arbitration, and the court below made no findings to this effect.[17]

The Magistrate Judge's conclusion that Parisi's "ability to vindicate her statutory rights appears even more threatened than was the ability of the plaintiffs in the *American Express* cases. . . ." is based on the erroneous premise

---

[16] *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("[T]he availability of attorneys' fees is a common basis for finding non-superiority . . . .") (citation omitted); *Mathews v. Book-of-the-Month Club, Inc.*, 62 F.R.D. 479, 479 (N.D. Cal. 1974) (denying class certification; individual persons aggrieved could sue and obtain their attorney's fees in addition to the substantive relief to which they were entitled; "]T]he statutory [remedies], including attorneys' fees, are a substitute . . . [for] the small litigant, for the class action device"); *Maguire v. Sandy Mac, Inc*., 145 F.R.D. 50, 53 (D.N.J. 1992) ("Where a statute provides attorney's fees to a prevailing plaintiff there is less incentive to protect by class certification individuals with small claims."); *Rose v. Medtronics, Inc*., 107 Cal. App. 3d 150, 157 (1980) ("Plaintiff's individual action provides him a sufficient vehicle to remedy any wrong he may have suffered as a result of defendant's conduct.").

[17] In *Amex III*, this Court distinguished decisions from other circuits in which the putative plaintiffs had not established that litigating their claims in arbitration would be cost-prohibitive.  *See* 667 F.3d at 217 (and cases there cited) ("plaintiffs' attempts to avoid the waiver clause failed because plaintiffs were unable to demonstrate the class-action waivers barred them from vindicating their statutory rights.")  Parisi did not even attempt such a showing.

-37-

that a plaintiff making pattern or practice allegations somehow stands in a privileged position compared to an individual asserting her Title VII claim under the traditional *McDonnell Douglas* framework. Citing this Court's decision in *Robinson, supra*, the Magistrate Judge stated that a plaintiff asserting pattern or practice allegations in a class action has, as a matter of "statutory right," a less onerous burden of proof than an individual plaintiff. As discussed above, *Robinson* describes the pattern or practice method of proof, but it certainly does not hold that a plaintiff's path to proving her Title VII claim is easier if she proceeds as a class representative, rather than individually, and certainly nothing in Title VII would support such a holding. Indeed, Title VII itself precludes any court from awarding relief to any individual absent proof that he or she was in fact the victim of discrimination. *See* 42 U.S.C. §2000(e)-5(g)(2)(A). Whether litigating individually or as part of a class, a private Title VII plaintiff proceeds under Section 706. The fact that courts have developed different methods of proof for individual and class actions in no sense means that Congress has created a privileged position for individuals who pursue their Title VII claims by a class action, or that it meant to disadvantage those proceeding by individual actions.

Nor is this a case in which an arbitration procedure is alleged to be inconsistent with a particular individual's ability to vindicate her rights. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (invalidating

-38-

particular arbitration agreement that precluded full statutory relief); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003) (same); *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (same); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 464-65 (S.D.N.Y. 1997) (refusing to enforce specific arbitration agreement that precluded an award of attorneys' fees); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 15-16 (1st Cir. 1999) (same).  In this case, the MD Agreement between Parisi and Goldman Sachs allows an arbitrator to award any relief on a plaintiff's individual claim that the plaintiff could obtain in a court of law, and contains no provisions inconsistent with the statutory scheme which would pose an impediment to Parisi's ability to litigate her claims fully and fairly.  This is not a case like *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010), where this Court ordered arbitration but noted that provisions in the arbitration agreement altering the statute of limitations and requiring the payment of fees to the prevailing party might have required a different result had they not been waived by counsel.

In short, the Magistrate Judge misapplied what he described as the "federal substantive law of arbitrability" in this case.  There are no procedural or substantive barriers to Parisi's ability to obtain full and fair relief for her claims in arbitration and there indisputably is no "congressional command" barring arbitration of her claims.  The decision below should be reversed.

## <u>CONCLUSION</u>

For the reasons set forth above, the decision below should be reversed, arbitration should be compelled for Parisi's claim, and her lawsuit should be dismissed.

Dated:  March 27, 2012
        New York, New York

PAUL HASTINGS LLP

By:    ___/s/ Zachary D. Fasman_____
       ZACHARY D. FASMAN
       BARBARA B. BROWN
       75 East 55th Street
       New York, New York 10022
       (212) 318-6000
       zacharyfasman@paulhastings.com
       barbarabrown@paulhastings.com


       SULLIVAN & CROMWELL LLP
       THEODORE O. ROGERS, JR.
       SUHANA S. HAN
       125 Broad Street
       New York, New York 10004
       (212) 558-4000
       rogerst@sullcrom.com
       hans@sullcrom.com

       *Attorneys for Defendants*,
       GOLDMAN, SACHS & CO. and
       THE GOLDMAN SACHS GROUP, INC.

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B). It contains 8,873 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has

been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in

<u>14 Point Times New Roman</u>.

Dated:  March 27, 2012

# SPECIAL APPENDIX

i

# Table of Contents

**Page**

Memo Endorsed Notice of Motion by Defendants to Compel
   Individual Arbitration, Filed November 15, 2011................... SPA-1

SPA-1

# MEMO ENDORSED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-15-11

---

H. CRISTINA CHEN-OSTER; LISA PARISI; and
SHANNA ORLICH,

                                        Plaintiffs,

                    vs.

GOLDMAN, SACHS & CO. and THE GOLDMAN
SACHS GROUP, INC.

                                        Defendants.

---

10 Civ. 6950 (LBS) (JCF)

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT, upon the accompanying Memorandum of Law, dated November 22, 2010, the Declaration of Erin E. LaRuffa, and supporting documents filed therewith, the undersigned counsel for Defendants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc. will move this Court on Thursday, December 9, 2010 at 2:15P.M. in courtroom 15-A, or on such date and at such time as it may please the Court, for an Order compelling individual arbitration and granting a stay of Plaintiff Parisi's claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4.

*Endorsement*

*After full briefing and oral argument the motion is denied.*

*So ordered*

*[signature] Sand  USDJ*

*11/14/2011*

MEMO ENDORSED

Dated: New York, New York
        November 22, 2010          PAUL, HASTINGS, JANOFSKY & WALKER LLP


                                  BY:     _____/s/ Zachary D. Fasman ___ _____
                                          BARBARA B. BROWN (*admitted pro hac vice*)
                                          ZACHARY D. FASMAN
                                          C. GEOFFREY WEIRICH (*admitted pro hac vice*)


                                  75 East 55th Street
                                  New York, New York 10022-3205
                                  (212) 318-6000
                                  barbarabrown@paulhastings.com;
                                  zacharyfasman@paulhastings.com;
                                  geoffweirich@paulhastings.com


                                  SULLIVAN & CROMWELL LLP
                                  THEODORE O. ROGERS, JR.
                                  SUHANA S. HAN
                                  JOHN F. FULLERTON III
                                  125 Broad Street
                                  New York, New York 10004
                                  (212) 558-4000
                                  rogerst@sullcrom.com
                                  hans@sullcrom.com
                                  fullertonj@sullcrom.com

                                  *Attorneys for Defendants*
                                  GOLDMAN, SACHS & CO. and
                                  THE GOLDMAN SACHS GROUP, INC.

SPA-3

Endorsement reads:

"After full briefing and oral argument the motion is denied."

So ordered.