# 11-5229-cv

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

LISA PARISI, SHANNA ORLICH, H. CHRISTINA CHEN-OSTER,

*Plaintiffs-Appellees,*

—against—

GOLDMAN, SACHS & CO., THE GOLDMAN SACHS GROUP, INC.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF PLAINTIFFS-APPELLEES

KELLY M. DERMODY, ESQ.
ANNE B. SHAVER, ESQ.
LIEFF, CABRASER, HEIMANN
    & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, California 94111
(415) 956-1000

F. PAUL BLAND, JR., ESQ.
PUBLIC JUSTICE
1825 K Street NW, Suite 200
Washington, DC, 20006
(202) 797-8600

ADAM T. KLEIN, ESQ.
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

PAUL W. MOLLICA, ESQ.
OUTTEN & GOLDEN LLP
203 North LaSalle Street, Suite 2100
Chicago, Illinois 60601
(312) 924-4888

*Attorneys for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF ISSUE PRESENTED FOR REVIEW ........................................1

PRELIMINARY STATEMENT ........................................................1

STATEMENT OF THE CASE...............................................................4

    I.    Plaintiff Parisi's Claims ..........................................................4

    II.    Goldman Sachs' Motion to Compel Individual Arbitration ................5

    III.    The April 28, 2011 Ruling Denying the Motion to Compel................6

    IV.    The July 7, 2011 Ruling Denying the Motion for Reconsideration......8

    V.    District Court Overrules Appeal of Judge Francis's Orders................9

STATEMENT OF FACTS ...............................................................10

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT ..........................................................................15

    I.    Title VII Provides a Private Pattern-or-Practice Cause of Action ......15

        A.    Private Pattern-or-Practice Claims Have Been Recognized
            by the Supreme Court Since 1976 ............................................15

        B.    The Pattern-or-Practice Framework Is Not Just a Procedural
            Rule, But Is Its Own Branch of Title VII Law ........................20

        C.    Defendant's Authority In No Way Disproves That
            Pattern-or-Practice Is Substantive Title VII Law ....................24

        D.    Defendant Admits That Pattern-or-Practice Must Be
            Pursued as a Class Claim ........................................................28

II.    Arbitration Is Not a Shield Against A Pattern-or-Practice Claim.......29

    A.    Defendant Overstates the Holding in *CompuCredit*.................30

    B.    Liberal Policy of the FAA Does Not Override the
Remedial and Deterrent Function of Title VII.........................33

    C.    A Title VII Claim May Not Be Prospectively Waived............34

    D.    Employees in Arbitration Cannot Properly Be Deprived
Of Their Practical Ability to Pursue Title VII Rights..............39

    E.    Defendant's Policy Arguments Provide No Basis for
Ignoring Controlling Supreme Court and Circuit Law............43

III.    The Supreme Court's Recent FAA Decisions in *Concepcion*
and *Stolt-Nielsen* Do Not Support Reversal........................44

CONCLUSION ...................................................47

# TABLE OF AUTHORITIES

**Page(s)**

<small>**CASES**</small>

*14 Penn Plaza LLC v. Pyett,*
    556 U.S. 247 (2009) ................................................................................passim

*Aliotta v. Bair,*
    614 F.3d 556 (D.C. Cir. 2010) ............................................................22

*Allison v. Citgo Petroleum Corp.,*
    151 F.3d 402 (5th Cir. 1998) ..............................................................23

*In re Am. Express Merchs.' Litig.,*
    634 F.3d 187 (2d Cir. 2011) ("*AmEx II*") ..........................................7, 8, 30, 31

*In re Am. Express Merchs.' Litig.,*
    667 F.3d 204 (2d Cir. 2012) ("*AmEx III*") ........................................31, 33, 34, 46

*Anderson v. Recore,*
    317 F.3d 194 (2d Cir. 2003) ...............................................................22

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................43

*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 1740 (2011) ........................................................................8, 15, 44, 45

*Bacon v. Honda of Am. Mfg., Inc.,*
    370 F.3d 565 (6th Cir. 2004) ..............................................................16, 27

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
    450 U.S. 728 (1981) ............................................................................35

*Baxter v. Savannah Sugar Ref. Corp.,*
    495 F.2d 437 (5th Cir. 1974) ..............................................................16

*Blake v. Bronx Lebanon Hosp.,*
    No. 02 Civ. 3827, 2003 WL 21910867 (S.D.N.Y. Aug. 11, 2003) ....28

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,*
    133 F. Supp. 2d 162 (E.D.N.Y. 2001) ...............................................36

*Booker v. Robert Half Int'l, Inc.*,
    413 F.3d 77 (D.C. Cir. 2005)...............................................................41

*Brown v. Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998) ...............................................................22

*Celestine v. Petroleos de Venezuela S.A.*,
    266 F.3d 343 (5th Cir. 2001) ..............................................................24

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)..........................................................................2, 6

*CompuCredit v. Greenwood*,
    132 S. Ct. 665 (2012)...................................................................passim

*Computer Econ., Inc. v. Gartner Grp., Inc.*,
    50 F. Supp. 2d 980 (S.D. Cal. 1999)....................................................36

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984)....................................................................passim

*In re Cotton Yarn Antitrust Litig.*,
    505 F.3d 274 (4th Cir. 2007) ..............................................................41

*Davis v. Coca-Cola Bottling Co. Consol.*,
    516 F.3d 955 (11th Cir. 2008) ......................................................23, 28

*Davis v. Metro. Transp. Auth.*,
    No. 07 Civ. 3561, 2012 WL 727696 (S.D.N.Y. Mar. 6, 2012).........28

*In re Deposit Ins. Agency*,
    482 F.3d 612 (2d Cir. 2007) ...............................................................29

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    191 F.3d 198 (2d Cir. 1999) ...................................................6, 29, 34

*Diaz v. Kraft Foods Global, Inc.*,
    653 F.3d 582 (7th Cir. 2011) ..............................................................22

*Discover Bank v. Superior Court*,
    36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005)................45

*Dister v. Cont'l Grp., Inc.*,
  859 F.2d 1108 (2d Cir. 1988) ...................................................38

*Earley v. Champion Int'l Corp.*,
  907 F.2d 1077 (11th Cir. 1990) ...............................................40

*EEOC v. Associated Dry Goods Corp.*,
  449 U.S. 590 (1981)...............................................................19

*EEOC v. Cont'l Oil Co.*,
  548 F.2d 884 (10th Cir. 1977) .................................................17

*EEOC v. Waffle House*,
  534 U.S. 279 (2002).................................................................25

*Eisenberg v. Advance Relocation & Storage, Inc.*,
  237 F.3d 111 (2d Cir. 2000) ....................................................35

*Faragher v. City of Boca Raton*,
  524 US 775 (1997)...................................................................26

*Franks v. Bowman Transp. Co.*,
  424 U.S. 747 (1976)..........................................................passim

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)....................................................... 6, 34, 42

*Gilty v. Vill. of Oak Park*,
  919 F.2d 1247 (7th Cir. 1990) .................................................27

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010).......................................................36

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000).......................................................2, 33, 34

*Guyden v. Aetna, Inc.*,
  544 F.3d 376 (2d Cir. 2008) ....................................................41

*Hazelwood Sch. Dist. v. United States*,
  433 U.S. 299 (1977)..................................................................17

*Hohider v. United Parcel Serv., Inc.*,
    574 F.3d 169 (3d Cir. 2009) .......................................................23, 28

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977)..............................................................passim

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*,
    534 U.S. 124 (2001)...........................................................................46

*James River Ins. Co. v. Kemper Cas. Ins. Co.*,
    585 F.3d 382 (7th Cir. 2009) .............................................................36

*Jock v. Sterling Jewelers, Inc.*,
    646 F.3d 113 (2d Cir. 2011) ..............................................................37

*Karp v. CIGNA Healthcare, Inc.*,
    No. 11 Civ. 10361, 2012 WL 1358652 (D. Mass. Apr. 18, 2012)....................25

*Kolstad v. Am. Dental Ass'n*,
    527 U.S. 526 (1999)...........................................................................26

*Madeira v. Affordable Hous. Found., Inc.*,
    469 F.3d 219 (2d Cir. 2006) ..............................................................46

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)....................................................................15, 26

*McKennon v. Nashville Banner Publ'g Co.*,
    513 U.S. 352 (1995)...........................................................................26

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..............................................................passim

*N.Y. Gaslight Club, Inc. v. Carey*,
    447 U.S. 54 (1980)............................................................................19

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...........................................................................38

*Preston v. Ferrer*,
    552 U.S. 346 (2008)...........................................................................29

*Puffer v. Allstate Ins. Co.*,
    675 F.3d 709 (7th Cir. 2012) ....................................................19, 23

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010) ................................................................31

*Ricci v. DeStefano*,
    129 S. Ct. 2658 (2009)........................................................................26

*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001) ........................................................passim

*Semple v. Fed. Express Corp.*,
    566 F.3d 788 (8th Cir. 2009) ..............................................................40

*Sims v. Great Am. Life Ins. Co.*,
    469 F.3d 870 (10th Cir. 2006) ............................................................36

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S. Ct. 1758 (2010)..........................................15, 29, 44, 45

*Thiessen v. Gen. Elec. Capital Corp.*,
    267 F.3d 1095 (10th Cir. 2001) ....................................................23, 28

*Tucker v. Gonzales*,
    No. 03 Civ 3106, 2005 WL 2385844 (S.D.N.Y. Sept. 27, 2005)....................24

*Tyler v. Bethlehem Steel Corp.*,
    958 F.2d 1176 (2d Cir. 1992) ............................................................38

*United States v. City of N.Y.*,
    631 F. Supp. 2d 419 (S.D.N.Y. 2009) ..............................................28

*United States v. City of N.Y.*,
    683 F. Supp. 2d 225 (E.D.N.Y. 2010) ..............................................25

*Velez v. Marriott PR Mgmt., Inc.*,
    590 F. Supp. 2d 235 (D.P.R. 2008), No. 05 Civ 2108, 2009 WL 483137
    (D.P.R. Feb. 25, 2009) ........................................................................24

*Velez v. Novartis Pharm. Corp.*,
    244 F.R.D. 243 (S.D.N.Y. 2007) ........................................................25

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
  515 U.S. 528 (1995).................................................................34

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..............................................13, 18, 22, 44

*Wright v. Stern*,
  450 F. Supp. 2d 335 (S.D.N.Y. 2006) .................................25

**STATUTES**

28 U.S.C. § 2072(b) ....................................................................38

42 U.S.C. § 2000e-6....................................................................25

Federal Arbitration Act,
  9 U.S.C. §§ 1-16 .....................................................................2

Title VII of the Civil Rights Act of 1964,
  42 U.S.C. §§ 2000e *et seq.*.....................................................4

**OTHER AUTHORITIES**

New York City Human Rights Law,
  N.Y.C. Admin. Code §§ 8-107 *et seq.*....................................4

Fed. R. Civ. P. 8 .........................................................................43

Fed. R. Civ. P. 11 .......................................................................43

Fed. R. Civ. P. 23 .................................................................37, 44

Tristin K. Green, *Targeting Workplace Context: Title VII as a Tool for
  Institutional Reform*, 72 Fordham L. Rev. 659 (2003)........................15

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

Did the District Court correctly refuse to compel arbitration under the Federal Arbitration Act where such an order would effect a prospective waiver of an employee's ability under *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984); *Robinson v. Metro-North Commuter Railroad Co*., 267 F.3d 147 (2d Cir. 2001), and other authority to pursue a Title VII pattern-or-practice claim?

## PRELIMINARY STATEMENT

This Court must decide whether Goldman Sachs' compulsory arbitration policy for its Managing Directors, which includes Title VII claims within its scope, may insulate defendant entirely from a private Title VII pattern-or-practice action. A pattern-or-practice action is one that focuses not "on individual [discriminatory] decisions, but on a pattern of discriminatory decision-making." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 n.46 (1977). Private pattern-or-practice cases have played an important role in the fulfillment of Title VII, as they not only provide compensation for victims of discrimination, but implement the broader purpose of deterring and remedying systemic bias in the workplace.

The District Court held, under settled Supreme Court and Second Circuit authority, that an arbitration policy that allows only individual proceedings – and bars an employee from filing a Title VII pattern-or-practice claim to challenge an

entire discriminatory policy *in any forum* – works a prospective waiver upon an employee's ability to pursue a systemic Title VII claim (JA 186-98).

Barring private pattern-or-practice cases amounts to more than simply changing the forum for the controversy, as provided by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (in arbitration, "'a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum'") (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). It goes beyond even rendering pursuit of a claim "prohibitively expensive." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). The policy that Goldman Sachs advances here would render *legally impossible* any private challenge to, or correction of, a pattern or practice of discrimination. This violates a key principle that substantive Title VII rights may not be prospectively waived. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009) ("federal antidiscrimination rights may not be prospectively waived").

Were Goldman Sachs to succeed with this argument, then any employer could avoid all systemic Title VII challenges from employees simply by demanding individual arbitration agreements from each of them, depriving them of a legal framework or forum to enforce Title VII protections against workplace patterns or practices that discriminate by sex or race. This result is untenable.

- 2 -

Goldman Sachs also seeks to persuade this Court that private pattern-or-practice claims simply do not exist. But this argument fails even to acknowledge the controlling precedent of *Cooper*, where the Supreme Court held that:

> The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decisionmaking."

*Cooper*, 467 U.S. at 876 (quoting *Teamsters*, 431 U.S. at 360 n.46). The District Court properly relied on *Cooper* (JA 193) in holding that pattern-or-practice is a distinct claim. Goldman Sachs likewise ignores *Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976), another key, private Title VII pattern-or-practice case.

Goldman Sachs also seeks to shift the focus of this appeal by stressing, as a ground for reversal, the District Court's alleged "hostility" to arbitration (Goldman Br. at 11). Yet the decision below disavowed "any suggestion that an arbitrator is less competent than a court, is less able to find facts than a court, or is generally unable to vindicate statutory rights" (JA 198 n.8). In substance, this is less a case about arbitration than an appeal brought by an employer trying to avoid systemic adjudication of a Title VII claim under the cloak of an arbitration policy.

If, as the District Court concluded, pattern-or-practice claims require some form of class mechanism, then an arbitration policy that allows only individual

arbitration must give way in order to avoid an unlawful waiver of Title VII substantive rights. As the District Court correctly held (JA 197 n.7), "[g]iven the case law in this district indicating the plaintiff may not bring a pattern or practice claim as an individual, she would have absolutely no recourse for proving her claim" if individual arbitration were compelled. The District Court recognized that an arbitration policy cannot insulate a covered employer prospectively from pattern-or-practice liability under Title VII, and that such claims may be filed in court if they are not otherwise arbitrable as a class.

Because the District Court correctly applied the relevant arbitration and Title VII pattern-or-practice case law, the Order denying arbitration should be affirmed.

## STATEMENT OF THE CASE

### I.    Plaintiff Parisi's Claims

Plaintiff Lisa Parisi and two co-plaintiffs commenced this Title VII action in September 2010 alleging that Goldman Sachs has engaged in a pattern-or-practice of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107 *et seq*. (JA 29-96). Plaintiffs also filed on behalf of similarly situated women, seeking Rule 23 class certification.

In their First Amended Complaint ("FAC"), Plaintiffs allege that Goldman Sachs maintains an intentional "systematic policy, pattern, and/or practice of

discrimination against its female Associates, Vice Presidents, and Managing Directors" (JA 253, 255, FAC ¶¶ 135, 150). This includes the use of unvalidated and biased performance, compensation, and promotion systems, "[s]ystematically and intentionally undervaluing [womens'] aptitude and performance" and "[f]ailing and refusing to take reasonable and adequate steps to prevent and correct the use of standardless, unvalidated, and/or illegitimate criteria to determine the terms and conditions of employment." (JA 253, 256, FAC ¶¶ 135, 150). The FAC also alleges that Goldman Sachs relied on "illegitimate and unvalidated systems and criteria to distribute business opportunities, determine levels of professional support, evaluate employee performance, set compensation, . . . select individuals for promotion, and determine other terms and conditions of employment [that] have an adverse impact on female Associates, Vice Presidents, and Managing Directors" (JA 254, 257, FAC ¶¶ 143, 159).

Goldman Sachs moved twice to strike Plaintiffs' class allegations (JA 15, Dkt. No. 66; JA 19, Dkt. No. 98), each being denied by the Magistrate Judge (JA 20, Dkt. No. 105, objections overruled, JA 27, Dkt. No.133; JA 27, Dkt. No.134, objections pending).

## II.    Goldman Sachs' Motion to Compel Individual Arbitration

On November 22, 2010, Goldman Sachs moved to stay Parisi's participation in this case and to compel individual arbitration of her claims (JA 97). In support

of its motion, Goldman Sachs cited an arbitration clause in a November 4, 2003 employment letter ("Employment Agreement") that Parisi signed as a condition of her promotion to Managing Director (JA 168-69). The Employment Agreement provides for binding arbitration of employment matters (JA 105). The District Court referred the motion to Magistrate Judge James C. Francis (JA 12, Dkt. 35).

## III. The April 28, 2011 Ruling Denying the Motion to Compel

On April 28, 2011, Judge Francis denied the motion to compel arbitration in a Memorandum and Order ("April 28 Order") (JA 167-201). Goldman Sachs prevailed on its argument that the arbitration clause, which is silent as to the availability of class claims, does not allow for class arbitration of Parisi's claims (JA 181-86, citing *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010)). But the District Court also held that the Employment Agreement's preclusion of class arbitration would make it impossible for plaintiff Parisi to arbitrate her Title VII pattern-or-practice claim, and that the clause thus operated as a waiver of substantive rights under Title VII (JA 186-98).

Judge Francis emphasized Supreme Court and Second Circuit authority directing that arbitration clauses may not operate as a waiver of substantive rights (JA 187-88, citing *Pyett*, 556 U.S. at 273; *Circuit City*, 532 U.S. at 123; *Gilmer*, 500 U.S. at 26; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d

198, 205-06 (2d Cir. 1999) (substantive rights "not in any way diminished" by arbitration, as "plaintiff's rights may be as fully vindicated in [an arbitral forum] as in [a judicial one]"), *cert. denied*, 531 U.S. 1069 (2001)).

Pursuant to this line of authority, the court concluded that the "substantively distinct" pattern-or-practice claims alleged under Title VII, adjudicated through the *Teamsters* burden-shifting framework, constitute a statutory claim that cannot be prospectively waived through an agreement to arbitrate (JA 195-97). To compel individual arbitration in this case would preclude Parisi from adjudicating her pattern-or practice claims under the *Teamsters* framework (JA 193-97, noting that "there is a consensus among courts in this district that pattern or practice claims may not be brought by a single individual"). Thus the arbitration clause amounts to a waiver of plaintiff's substantive rights under Title VII, and is unenforceable as an invalid prospective waiver of substantive Title VII rights (JA 195-98).

Judge Francis further observed *Stolt-Nielson* did not demand a different result. While *Stolt–Nielsen* reaffirmed "'that parties cannot be forced to engage in a class arbitration absent a contractual agreement to do so,'" the decision did not render "'a contractual clause barring class arbitration [] per se enforceable'" (JA 190, quoting *In re Am. Express Merchs.' Litig*., 634 F.3d 187, 193-94 (2d Cir. 2011) ("*AmEx II*"), *aff'd on reh'g*, 667 F.3d 204 (2d Cir. 2012)). A federal court

may not enforce an arbitration clause if it would "prevent a prospective litigant from vindicating its rights" (JA 190-91, quoting *AmEx II*, 634 F.3d at 197).

## IV.    The July 7, 2011 Ruling Denying the Motion for Reconsideration

On May 12, 2011, Goldman Sachs moved for reconsideration of the April 28 Order (JA 204), based entirely on *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), a decision issued by the Supreme Court one day before the April 28 Order (JA 207-08). Judge Francis denied the motion to reconsider, confirming the reasoning in the April 28 Order: "I determined that federal law creates a substantive right to be free from a 'pattern or practice' of discrimination by an employer; I further concluded that, absent the ability to arbitrate on a class basis, mandating arbitration would preclude the plaintiff from" enforcing this right (JA 208-09). Judge Francis observed that *Concepcion* addressed an entirely different legal issue – FAA preemption of state common law related to contracts (JA 212-13). By contrast, Goldman Sachs' motion to compel raised the question of "whether the FAA's objectives are also paramount when, as here, rights created by a competing federal statute are infringed by an agreement to arbitrate." (*Id.* at 213).

The District Court stressed that "[b]ecause arbitrators will apply the same substantive law of Title VII as would be applied by a federal court, and the substantive law of Title VII as applied by the federal courts prohibits individuals from bringing pattern or practice claims, this case implicates federal statutory

(Congressionally-created) rights, not the 'judicially-created obstacle [] to the enforcement of agreements to arbitrate' that was at issue in *Concepcion*" (JA 214-15, internal citations omitted). Though the April 28 Order, "like the result that was overturned in *Concepcion*," invalidated an arbitration agreement because it does not allow for class adjudication, the ruling was unlike *Concepcion*, because "the right at the center of this case is not the right to proceed on a class basis but rather the right to vindicate a claim that an employer has engaged in a pattern or practice of discrimination" (JA 215).

## V.    District Court Overrules Appeal of Judge Francis's Orders

Goldman Sachs appealed Judge Francis's denial of the motion to compel individual arbitration to the District Court, and on November 14, 2011 the parties appeared for a hearing before District Judge Sand (JA 292-313). During the hearing, counsel for Goldman Sachs conceded several times that in the absence of the ability to proceed on a class basis, a Title VII plaintiff cannot pursue a pattern-or-practice claim, stating that in Title VII, "[t]here is no mention of any individual pattern or practice claim" (*id.* 295), that "if an individual has given up their right freely to pursue a class action . . . then there is no such pattern-or-practice claim for individuals" (*id.*), and that "[i]f you look at" controlling authority reviewing "whether individuals have a pattern-or-practice claim, they do not" (*id.*).

- 9 -

At the conclusion of oral argument on November 14, 2011, as later confirmed in a November 15, 2011 endorsement, Judge Sand denied Goldman Sachs' appeal without opinion (JA 312, 314).

## STATEMENT OF FACTS

Goldman Sachs is a global investment banking, securities and investment management firm that generated $45 billion in net revenues and $13 billion in net earnings in 2009 (JA 222, FAC ¶ 2). Parisi alleges that the company discriminated against women Managing Directors ("MDs") (JA 222-24, FAC ¶¶ 3-9).

Parisi joined Goldman Sachs as a Vice President ("VP") in 2001 (JA 245, FAC ¶ 101). She was promoted to MD in 2003 (*id.*). Despite excellent performance, this was her only promotion during her seven-year tenure at the firm (*id.*). As a condition of her promotion, Goldman Sachs required Parisi to sign an Employment Agreement providing for binding arbitration of "any dispute, controversy, or claim arising out of or based upon or relating to Employment Related Matters." (JA 105). This made no reference to class claims.

During Parisi's employment as an MD, Goldman Sachs discriminated against her, and other similarly situated women, by denying business opportunities and other terms and conditions of employment made available to similarly situated males (JA 232, 245, FAC ¶¶ 52-54, 102), providing unfair performance reviews relative to the reviews provided to similarly situated males (JA 228-30, 245, FAC

- 10 -

¶¶ 37-42, 102-03 ), paying less than similarly situated men (JA 230-31, 245-46,

FAC ¶¶ 43-48, 102-03, 105), and promoting less qualified men to positions Parisi

was qualified to hold (JA 231-32, 246, 282 (FAC ¶¶ 49-51, 102, Ex. 2. ¶ 7).

Such practices were widespread, resulting in Goldman Sachs paying women

less than similarly situated men, and in the disproportionate promotion of men over

equally qualified women (JA 222-23, FAC ¶¶ 3-4, 6). Women make up only 17%

of Goldman Sachs' MDs (as of 2009) and only 14% of its Partners (as of 2008)

(JA 222-23, FAC ¶ 5). As of 2010, Goldman Sachs' Management Committee and

officer positions had proportionately even lower female representation rates (*id.*).

The Plaintiffs identified a number of systemic and company-wide policies or

practices that contribute to the discriminatory environment and outcomes:

● A "360-degree" performance-review process that, combined with an

adjustment process, leads to unvalidated quartile rankings that "systematically

underrate[s] female employees relative to male employees - that is, women, on

average, receive lower 360-degree review scores, more negative reviews, and

lower quartile rankings than men in similar positions who have delivered similar or

worse objective performance" (JA 228-30, FAC ¶¶ 37-42).

● The use of "uniform, unvalidated procedures for determining employees'

compensation that disparately impact female professionals," including the use of a

"small corps of managers to employ standardless, unvalidated, and/or illegitimate

criteria without accountability measures to determine how credit is allocated to employees who share assets, accounts, or responsibility for a particular business" (JA 230-31, FAC ¶¶ 43-48).

● A promotion system, strongly affecting compensation opportunities, that requires nomination under a process "tightly controlled among a small corps of managers whose decisions are based on inaccurate and unvalidated performance measures" and highly favors male candidates (JA 231-32, FAC ¶¶ 49-51).

● The distribution of business-development opportunities by quartile ranking, that amplifies the above-noted bias and impact of the review and promotion system, plus systemic denial to women of opportunities for lucrative lateral transfers (JA 232, FAC ¶¶ 52-54).

Parisi filed an EEOC charge under Title VII on January 6, 2010 (JA 248, 280-8, FAC ¶ 111, Ex. 2). She and her two co-plaintiffs commenced this action alleging that Goldman Sachs engages in a pattern or practice of sex discrimination and disparate impact in violation of Title VII and the NYCHRL.

## SUMMARY OF THE ARGUMENT

In Section I, Parisi establishes – contrary to Goldman Sachs' argument – that private pattern-or-practice actions are a long-standing, substantive part of the Title VII landscape. First recognized by the Supreme Court in *Franks*, 424 U.S. 747,

this framework of proof has been reaffirmed in *Cooper*, 467 U.S. at 876 n. 9, and more recently in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011).

In contrast to individual disparate treatment cases, which typically examine the motive behind (and seek relief for) discrete adverse employment actions, pattern-or-practice cases challenge and remedy entire systems that affect a wide group of employees (§ I.A). This Court recognizes that "[d]isparate treatment claims under Title VII generally are of two types: (1) individual disparate treatment claims and (2) pattern-or-practice disparate treatment claims that center on group-wide allegations of intentional discrimination." *Robinson*, 267 F.3d at 158 n.3. Far from mere procedural artifacts of Title VII, as Goldman Sachs regards them, the distinct proof and shifting-burden structure of these claims go to the very core of substantive Title VII law. The Supreme Court notes that "[t]he crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest." *Cooper*, 467 U.S. at 876 (§ I.B). Goldman Sachs cites non-controlling cases that it claims support a different view, but none in fact contradict this settled body of law (§ I.C).

Significantly for this appeal, there is no dispute that Title VII pattern-or-practice cases must proceed as class actions, not as individual proceedings (§ I.D).

In Section II, Parisi establishes that because Title VII pattern-or-practice claims are substantive, rather than procedural, such claims may not be

- 13 -

prospectively waived by an arbitration policy that permits only individual (not class) proceedings. This section initially addresses why the ruling in the recent decision, *CompuCredit v. Greenwood*, 132 S. Ct. 665, 669 (2012), has no impact on the prospective-waiver issue, because it addresses a different line of authority – cases involving express Congressional language barring arbitration of a statutory claim (§ II.A). It then shows that an arbitration policy that abrades the deterrent and remedial effect of a statute may not be enforced (§ II.B). Arbitration is enforced only "so long as the prospective litigant may effectively vindicate its statutory cause of action in the arbitral forum." *Mitsubishi Motors*, 473 U.S. at 632.

As the District Court held, Goldman Sachs' arbitration policy, if construed to preclude class arbitration, makes impossible the filing of a private pattern-or-practice claim in *any* forum, either arbitration or civil court (§ II.C). This is more than the mere withdrawing of a procedure – it would remove a type of claim and remedial structure with a four-decade provenance that is indispensible to bringing challenges to discriminatory policies and systems (§ II.D). This is, indeed, the very prospective waiver of a substantive claim forbidden by federal arbitration law. *Pyett*, 556 U.S. at 265 ("federal antidiscrimination rights may not be prospectively waived"). Not only does Goldman Sachs' argument wipe pattern-or-practice claims off the table, but it also renders it impracticable for an employee to present statistical, expert and other evidence to prove a pattern or practice (§ II.E).

- 14 -

Finally, in Section III, Parisi addresses the holdings in two recent FAA cases, *Stolt-Nielsen*, 130 S. Ct. 1758, and *Concepcion*, 131 S. Ct. 1740, and explains why these cases have no impact on the denial of the motion to compel arbitration. For the above reasons, the decision below should be affirmed.

## ARGUMENT

## I.  Title VII Provides a Private Pattern-or-Practice Cause of Action

### A.  Private Pattern-or-Practice Claims Have Been Recognized by the Supreme Court Since 1976

Title VII was never limited to individual relief, as Goldman Sachs suggests. Congress envisioned Title VII as transformative legislation to end discrimination against historically-disfavored groups – "to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973).

Since the inception of Title VII, private pattern-or-practice cases have been used to attack discriminatory policies root-and-branch.[1] In the first such case to

---

[1] Tristin K. Green, *Targeting Workplace Context: Title VII as a Tool for Institutional Reform*, 72 Fordham L. Rev. 659, 677-79 (2003) (observing that private Title VII class actions in the 1970s "challenge[d] wide-spread systems and policies of discrimination" and "alleged discrimination on a company-wide scale and sought significant institutional reform, including elimination of entry requirements and reorganization of seniority systems," in addition to seeking make-whole relief).

reach the Supreme Court, *Franks*, 424 U.S. 747, the plaintiff alleged, on behalf of a class, that the employer had engaged in a pattern or practice of discrimination against African-Americans in the hiring, transfer, and discharge of workers. *Franks* repeated "the observation of earlier decisions that in enacting Title VII of the Civil Rights Act of 1964, Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin . . . and ordained that its policy of outlawing such discrimination should have the 'highest priority.'" *Id.* at 763 (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)) (internal citation omitted). The *Franks* Court held that proving the existence of a pattern or practice establishes a rebuttable presumption that individual class members suffered discrimination, relying on *Baxter v. Savannah Sugar Refining Corp.*, 495 F.2d 437, 443-44 (5th Cir. 1974), *cert. denied*, 419 U.S. 1033 (1974), a pioneering private Title VII race discrimination class case. *Franks*, 424 U.S. at 773.

The focus in a pattern-or-practice case has always been on the effects of a wide policy on a workplace, rather than on individual acts of discrimination. *See, e.g.*, *Cooper*, 467 U.S. at 876; *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 575 (6th Cir. 2004) ("[A] pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case.");

- 16 -

*EEOC v. Cont'l Oil Co*., 548 F.2d 884, 887 (10th Cir. 1977) (pattern-or-practice claims attack "broad based systematic discrimination," while "thrust of § 706 actions . . . is vindication of individual instances of discrimination").

In 1977, *after* the Supreme Court had decided *Franks* and federal courts of appeals recognized that Title VII provides for private pattern-or-practice claims, a pair of § 707 federal government cases helped to refine the legal framework for proving such claims. *Teamsters*, 431 U.S. at 360-62, established the shifting burdens of proof that are the hallmark of pattern-or-practice proof and remedies. Then, in *Hazelwood School District v. United States*, 433 U.S. 299, 306-13 (1977), the Supreme Court applied the *Teamsters* framework to examine a pattern-or-practice finding of discrimination in support of African American public teachers.

In *Robinson*, 267 F.3d 147, this Court summarized the *Teamsters* shifting presumptions, burden of proof and remedial structure for a Title VII pattern-or-practice case. As *Robinson* held, "[p]attern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Id.* at 158 (quoting *Teamsters*, 431 U.S. at 336).

- 17 -

Under the framework of Title VII pattern-or-practice cases, plaintiffs need not initially prove individual incidents of discrimination; they need only establish that a pattern or practice of discrimination exists. *Teamsters*, 431 U.S. at 360 & n.46. They present expert witnesses, statistical evidence, and anecdotal testimony from employees to meet this burden. Even if the employer rebuts individual acts of discrimination, it must show that statistical evidence is either inaccurate or insignificant to escape liability. *Id.* at 360; *Robinson*, 267 F.3d at 158-59.

Once a pattern or practice of discrimination is found, an individual plaintiff carries a rebuttable presumption that she was the victim of discrimination into the second phase of trial at which damages are established. *Teamsters*, 431 U.S. at 359 n.45, 361-62; *Robinson*, 267 F.3d at 159. And the existence of a pattern or practice alone is enough to allow a classwide award of prospective relief, without proof of individual victims of discrimination. *Teamsters*, 431 U.S. at 361.

The Supreme Court reaffirmed this framework in another private, putative class action, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011):

> In a pattern-or-practice case, the plaintiff tries to "establish by a preponderance of the evidence that . . . discrimination was the company's standard operating procedure[,] the regular rather than the unusual practice." *Teamsters v. United States*, 431 U.S. 324, 358, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977); *see also Franks v. Bowman Transp. Co.*, 424 U.S. 747, 772, 96 S. Ct. 1251, 47 L. Ed. 2d 444 (1976). If he succeeds, that showing will support a rebuttable inference that all class members were victims of the discriminatory practice, and will justify "an award of prospective relief," such as "an

injunctive order against the continuation of the discriminatory practice." *Teamsters*, *supra*, at 361, 97 S. Ct. 1843.

*Id.* at 2561; *see also Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716-17 (7th Cir. 2012) (distinguishing pattern-or-practice from disparate impact claims).

Goldman Sachs asserts that Title VII authorizes only federal government pattern-or-practice cases (Goldman Br. at 12, 22-25). As the District Court recognized, though (JA 193), the Supreme Court interprets Title VII to provide a pattern-or-practice claim for non-governmental plaintiffs as well. *See Cooper*, 467 U.S. at 876 n. 9. In *Cooper*, the Supreme Court held that while *Teamsters*, an action brought by the Attorney General, "involved an action litigated on the merits by the Government as plaintiff under § [2000e–6(a)] of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action." *Id.* This is not simply a "judicially-created" right (*see* Goldman Br. at 22); it is part-and-parcel of a Congressional plan to grant employees co-equal authority to litigate Title VII as private attorney generals. *See EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 602 (1981) ("Congress considered the charging party a 'private attorney general,' whose role in enforcing the ban on discrimination is parallel to that of the Commission itself"); *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63 (1980) ("Congress has cast the Title VII plaintiff in the role of 'a private attorney general,' vindicating a policy 'of the highest priority'") (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978)).

- 19 -

**B.    The Pattern-or-Practice Framework Is Not Just a Procedural Rule, But Is Its Own Branch of Title VII Law**

The District Court's holding that pattern-or-practice claims are substantively distinct from individual disparate treatment claims (JA 192-198) is well-supported in Supreme Court jurisprudence, and by the decisions of this Circuit. *See, e.g.*, *Cooper*, 467 U.S. at 876-77 (clarifying that a cause of action for Title VII pattern-or-practice liability is distinct from an individual disparate treatment cause of action); *Robinson*, 267 F.3d at 158 n.3 ("Disparate treatment claims under Title VII generally are of two types: (1) individual disparate treatment claims and (2) pattern-or-practice disparate treatment claims, . . . that center on group-wide allegations of intentional discrimination.").[2]

In *Cooper*, the EEOC brought a Title VII pattern-or-practice action against the defendant bank for failing to promote different levels of African American staff in its Charlotte, North Carolina branch during 1974-78. *Cooper*, 467 U.S. at 869. While the district court found a pattern or practice of discrimination within grades 4 and 5, it found no such proof over the grade 5 level. *Id.* at 871-72. Thereafter, employees at the higher grades filed their own separate actions alleging individual discrimination, but the Fourth Circuit held that their claims were held barred by *res judicata* based on the pattern-or-practice finding against their group. *Id.* at 873.

---

[2] The language cited by Goldman Sachs from the 1977 *Teamsters* decision (Goldman Br. at 28) must be read in light of the clarification in *Cooper* that the two types of claims – individual and pattern-or-practice – are entirely distinct.

The Supreme Court reversed. The unanimous decision recognized that an individual employee alleging discrimination may establish an inference of bias using the *McDonnell Douglas* method of proof (*Cooper*, 467 U.S. at 875), but held that this method concerns a separate analysis from pattern-or-practice claims:

> *The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest.* The inquiry regarding an individual's claim is the reason for a particular employment decision, while "at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision-making." [*Teamsters*, 431 U.S.] at 360, n.46.

*Cooper*, 467 U.S. at 876 (emphasis added) (internal citations omitted). Thus, the Supreme Court held that the pattern-or-practice finding did not bar individuals from pursuing separate claims:

> Given the burden of establishing a prima facie case of a pattern or practice of discrimination, it was entirely consistent for the District Court simultaneously to conclude that Cooper and Russell had valid individual claims even though it had expressly found no proof of any classwide discrimination above grade 5. It could not be more plain that the rejection of a claim of classwide discrimination does not warrant the conclusion that no member of the class could have a valid individual claim.

*Id.* at 878. It is impossible to reconcile Goldman Sachs' repeated insistence that pattern-or-practice claims are not substantively distinct from individual disparate treatment claims with *Cooper*'s clear holding to the opposite effect.

This Circuit also recognizes that pattern-or-practice claims are a separate form [or type] of liability under Title VII, set apart from individual claims.

- 21 -

"Disparate treatment claims under Title VII generally are of two types: (1) individual disparate treatment claims, . . . and (2) pattern-or-practice disparate treatment claims that center on group-wide allegations of intentional discrimination." *Robinson*, 267 F.3d at 157 n.3. "Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals. To succeed on a pattern-or-practice claim, plaintiffs must prove more than sporadic acts of discrimination; rather, they must establish that intentional discrimination was the defendant's 'standard operating procedure.'" *Id.* at 158 (quoting *Teamsters*, 431 U.S. at 336); *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998) (distinguishing Title VII individual claims from pattern or practice claims).[3]

Other Circuits acknowledge that pattern-or-practice is a distinct type of claim. *See, e.g.*, *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 589 (7th Cir. 2011) (plaintiffs "are raising individual disparate treatment claims, not a broad-based *pattern or practice claim*") (emphasis added); *Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) (Supreme Court "created a framework for litigating *pattern*

---

[3] While Goldman Sachs disregards this holding in *Robinson*, citing it only in passing (*see* Goldman Br. at 27, 38), this Court may not ignore it. Prior holdings of this Court must be followed unless overruled by the Supreme Court, or by this Court *en banc*. *Anderson v. Recore*, 317 F.3d 194, 201 (2d Cir. 2003). The Supreme Court's decision in *Dukes* principally addressed class action certification issues, not at issue on this appeal, yet it also reaffirmed the Title VII pattern-or-practice framework applied in *Robinson. Dukes*, 131 S. Ct. at 2561.

*or practice claims*") (emphasis added); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 184-85 (3d Cir. 2009) ("the elements necessary to establish a pattern or practice of unlawful discrimination on behalf of a class may not mirror those necessary to establish a valid individual claim of discrimination, . . . and so the fact that individualized inquiries might preclude certification of class members' various individual claims of relief is not necessarily dispositive of whether that class's *pattern-or-practice claim* satisfies Rule 23") (emphasis added) (internal citation omitted); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 965 (11th Cir. 2008) ("[a] *pattern or practice claim* for such relief may also be brought under Title VII as a class action . . . .") (emphasis added).

Indeed, courts commonly refer to Title VII pattern-or-practice as a "theory" of liability. *See, e.g.*, *Puffer*, 675 F.3d at 716 ("Pattern-or-practice claims, like differential treatment claims, represent a theory of intentional discrimination."); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1108 (10th Cir. 2001) ("[W]hen an ADEA plaintiff relies upon a 'pattern or practice' theory and comes forward with legitimate evidence to support that theory, the district court must take into account the framework for pattern-or-practice cases outlined by the Supreme Court in [*Teamsters*]."); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 409 (5th Cir. 1998) (a pattern-or-practice claim is a "systemic disparate treatment theory").

- 23 -

In sum, the Supreme Court, this Court and its sister Circuits recognize that a pattern-or-practice claim is not just a procedural approach to proving a Title VII violation, as Goldman Sachs would describe it, but its own substantive branch of Title VII law with its own unique burdens of proof and remedial structure.

## C.    Defendant's Authority In No Way Disproves That Pattern-or-Practice Is Substantive Title VII Law

In support of its argument that pattern-or-practice is something less than a distinct Title VII theory or claim, Goldman Sachs cites three cases (Goldman Br. at 25-26), but it is apparent even from a cursory read of these (non-controlling) decisions that they merely support the narrower concept – unchallenged by the parties here – that there is no right to bring an *individual* pattern-or-practice claim. *See Celestine v. Petroleos de Venezuella S.A.*, 266 F.3d 343, 355 (5th Cir. 2001) ("The Supreme Court has never applied the *Teamsters* method of proof in a private, non-class suit and has recognized the distinction between individual racial discrimination claims and class actions . . . ."); *Velez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 244 (D.P.R. 2008) ("The Supreme Court has yet to extend the pattern or practice approach to private, non-class suits."), *modified in part on other grounds on reh'g*, No. 05 Civ. 2108, 2009 WL 483137 (D.P.R. Feb. 25, 2009); *Tucker v. Gonzales*, No. 03 Civ. 3106, 2005 WL 2385844, *5 (S.D.N.Y. Sept. 27,

- 24 -

2005) (pattern-or-practice count in single-plaintiff complaint is "at best, duplicative" of disparate treatment claim).[4]

Goldman Sachs also argues that the ability to advance a pattern-or-practice claim cannot be a *statutory* right of private Title VII plaintiffs, because only the federal government (under Title VII § 707, 42 U.S.C. § 2000e-6) possesses a "statutory" right to bring such claims (Goldman Br. at 12, 21-27).[5] It thus promotes the narrow view that a "statutory right" is one that appears *only* within

---

[4] A more recent decision – released subsequent to Goldman Sachs' filing of its appellate brief – is *Karp v. CIGNA Healthcare, Inc.*, No. 11 Civ. 10361, 2012 WL 1358652, *9 (D. Mass. Apr. 18, 2012), which does appear to embrace Goldman Sachs' view of the law in this arena. *Karp* evinces frank suspicion of (if not outright hostility to) the viability of private pattern-or-practice cases. *Id*. at *8. *Karp*'s view is inconsistent, though, with this Court's recognition of the private right of action in *Robinson*, echoed by district courts in this Circuit that have adjudicated private pattern-or-practice claims. *See, e.g.*, *United States v. City of N.Y.*, 683 F. Supp. 2d 225 (E.D.N.Y. 2010) (private plaintiff interveners filed pattern-or-practice case in United States disparate impact case); *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243 (S.D.N.Y. 2007); *Wright v. Stern*, 450 F. Supp. 2d 335 (S.D.N.Y. 2006) (Chin, J.).

[5] As a sidelight, Goldman Sachs contends (absent any authority) that the government lacks power to seek compensatory and punitive damages under 42 U.S.C. § 1981a(a)(1) (Goldman Br. at 23 & n.11). This is error. *EEOC v. Waffle House*, 534 U.S. 279, 291 (2002) ("As a complaining party, the EEOC may bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, backpay, and compensatory or punitive damages.").

the four corners of the statutory text, and that claims and defenses developed by courts, essentially as part of the "common law" of a statute, do not count.[6]

Goldman Sachs' argument disregards that much of Title VII law, as with private pattern-or-practice claims, was developed by courts as an interpretation of the statute. Conspicuously, *McDonnell Douglas*, 411 U.S. at 802, itself embraced a purely judicially-created rule for evaluating a claim of individual Title VII disparate treatment, found nowhere within the text of the statute itself. The Supreme Court has also recognized, in recent decades, affirmative defenses for employers under Title VII that have no textual grounding in the statutory language. *See, e.g.*, *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) ("strong basis in evidence" defense in disparate treatment case); *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 544-46 (1999) ("good faith" defense to punitive damages); *Faragher v. City of Boca Raton*, 524 US 775, 807-08 (1997) (defense against vicarious liability for supervisor sex harassment); *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 360-63 (1995) ("after-acquired evidence" defense to back pay). Goldman Sachs almost certainly would regard these defenses as statutory and substantive, despite not appearing explicitly in the text of the act. So, as shown above, courts at

---

[6] Goldman Sachs misquotes the District Court on this point (Goldman Br. at 21). While the court noted the "*substantive* right to be free from a 'pattern or practice' of discrimination," (JA 208), defendant substitutes the word "*statutory*." It quotes "substantive statutory right" (Goldman Br. at 2, 5, 21, 25-6, 32), as if this expression also originated with the District Court, yet that term too is purely of defendant's own invention (JA 218, 294, 298).

every level for nearly four decades have recognized that Title VII provides a statutory foundation for private claims of pattern-or-practice liability.

Goldman Sachs argues in the alternative that any statutory pattern-or-practice claim that does exist would not be compromised here, because an employee may still use pattern-or-practice *evidence* in arbitration to prove an individual Title VII, disparate treatment case, at the discretion of the arbitrator (Goldman Br. at 29-30). But there is a stark difference between a pattern-or-practice *claim* and pattern-or-practice *evidence*. Pattern-or-practice claims use the unique *Teamsters* proof structure, with a shifting burden of proof, and deliver systemic relief. Pattern-or-practice *evidence* does not shift the burden of proof and a favorable decision benefits the claimant only. Courts have recognized that the two concepts are thus entirely separate, and have at times foreclosed litigation of pattern-or-practice claims, even as they have allowed the presentation of pattern-or-practice evidence as collateral support for individual claims. *See, e.g.*, *Bacon*, 370 F.3d at 575 (*Teamsters* not available to individual plaintiffs, but "pattern-or-practice evidence may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework"); *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1252 (7th Cir. 1990) (pattern or practice evidence only collateral to evidence of specific bias against individual plaintiffs) (citing *Williams v. Boorstin*, 663 F.2d 109, 115 n. 38 (D.C. Cir. 1980), *cert. denied*, 451 U.S. 985

- 27 -

(1981)). Access to pattern-or-practice evidence in arbitration is not equivalent to the shifting presumptions, burden of proof, and systemic remedies of *Teamsters.*

In any event, and as the District Court noted, arbitrators are constrained to abide by applicable federal law (JA 214, citing *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 27 (2d Cir. 2000)), and federal district courts in this Circuit do not allow plaintiffs to litigate individual pattern-or-practice claims (JA 193-94, 196-97 & n.6). No "speculation as to how an arbitrator might rule" (Goldman Br. at 30) is necessary to reach the conclusion that Parisi would not be permitted to pursue her hypothetical individual pattern-or-practice claim before an arbitrator.

### D.    Defendant Admits That Pattern-or-Practice Must Be Pursued as a Class Claim

This Court has had no occasion to date to decide whether Title VII pattern-or-practice claims may be pursued outside of a class or collective action. A number of sister circuits, however, hold directly that pattern-or-practice claims are inherently class-oriented. *See Hohider*, 574 F.3d at 179; *Coca-Cola Bottling Co. Consol.*, 516 F.3d at 965; *Thiessen*, 267 F.3d at 1105-06.[7] The District Court, likewise, concluded for purposes of its analysis that pattern-or-practice claims must be brought as a class or not at all (JA 195-97 & n.6).

---

[7] Some district courts in this circuit so hold. *Davis v. Metro. Transp. Auth.*, No. 07 Civ. 3561, 2012 WL 727696, at *11 (S.D.N.Y. Mar. 6, 2012); *United States v. City of N.Y.*, 631 F. Supp. 2d 419, 427 (S.D.N.Y. 2009); *Blake v. Bronx Lebanon Hosp.*, No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003).

It turns out to be unnecessary for the Court to resolve this question here. Counsel for Goldman Sachs admitted in oral argument before the District Court that pattern-or-practice claims must be brought as a class. "[I]f an individual has given up their right freely to pursue a class action, which is what the magistrate found here, then there is no such pattern-or-practice claim for individuals" (JA 295). "That method of proof does not apply in individual cases and all the Courts of Appeals that have considered it, and the district courts in this district have agreed with that" (JA 298). In light of these admissions, this Court need not reach the legal question of whether individual pattern-or-practice cases are allowed, as no party challenges it. *See, e.g.*, *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("For purposes of this appeal, we assume, and no party disputes, that the Agency is a citizen or subject of a foreign state and that the Superintendent is an arm of the State of New York . . . ."); *cf. Stolt-Nielsen,* 130 S. Ct. at 1770 (relying on parties' stipulation that arbitration clause was "silent" on class actions).

## II.    Arbitration Is Not a Shield Against A Pattern-or-Practice Claim

The promise of the FAA is that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors*, 473 U.S. at 628; *accord Preston v. Ferrer*, 552 U.S. 346, 359 (2008); *Desiderio*, 191 F.3d at 205-06. Yet as Goldman Sachs would have it, a Managing Director

accepting arbitration as a condition of the Employment Agreement forfeits a Title VII pattern-or-practice claim, because such a claim cannot be advanced in an individual arbitration. The court below resolved this incompatibility in favor of allowing civil litigation of the Title VII pattern-or-practice claim. Were Goldman Sachs' arguments credited by this Court, employers could immunize themselves from private pattern-or-practice suits, just by crafting arbitration policies that are incompatible with such claims by channeling employees into individual hearings.

## A.    Defendant Overstates the Holding in *CompuCredit*

Before this brief shows why pattern-or-practice claims cannot be waived by arbitration, it is necessary first to address Goldman Sachs' threshold argument that a claim can only be made non-arbitrable by explicit Congressional command.

Citing language in *CompuCredit*, 132 S. Ct. at 669, Goldman Sachs argues that a claim *must* be arbitrable unless Congress *expressly* declares in a statute that the specific claim is not subject to arbitration (Goldman Br. at 11, 15- 21). This argument misapplies the holding of *CompuCredit* and is inconsistent with this Court's recent decision in *AmEx II*. *AmEx II*, 634 F.3d at 193-94. *AmEx II* involves an antitrust case, and the Supreme Court has already held that antitrust cases are arbitrable. *Mitsubishi Motors*, 473 U.S. at 632. Under Goldman Sachs' theory, the absence of express prohibitory language in the antitrust laws would have been the beginning and end of the analysis. To the contrary, this Court went on to hold on

- 30 -

other grounds that arbitration could not be compelled where claimants could not effectively vindicate their rights in arbitration. *AmEx II*, 634 F.3d at 193-94.

In stark contrast to the *CompuCredit* plaintiffs, who argued that the Credit Repair Organization Act ("CROA") statutorily barred arbitration, Parisi does not assert that Congress intended for *all* Title VII claims to be non-arbitrable. Parisi contends that her Title VII pattern-or-practice claim *in this case* is not arbitrable under the terms of Goldman Sachs' policy, because the arbitration clause does not allow for systemic adjudication of her pattern-or-practice claim. A congressional command is thus only *one* way that a conflict may occur between the FAA and substantive law. A conflict may *also* occur where the effect of judicial enforcement of an arbitration clause amounts to a *prospective waiver* of a legal claim: "should clauses in a contract operate 'as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.'" *In re Am. Express Merchs.' Litig.*, 667 F.3d 204, 214 (2d Cir. 2012) ("*AmEx III*") (quoting *Mitsubishi Motors*, 473 U.S. at 637 n. 19), *reh'g en banc denied*, No. 06–1871-cv, 2012 WL 1918412 (2d Cir. May 29, 2012); *see also Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 125 (2d Cir. 2010) (doubting enforceability of arbitration clause with short limitations period and fee-shifting term that would diminish Title VII rights; conflict avoided when defendant waived these terms).

- 31 -

In *CompuCredit*, moreover, there was no argument that an individual would be deprived of a forum to obtain all of her remedies under the CROA in an individual arbitration. To compel arbitration there did not keep anyone from effectively vindicating their rights. Here, by contrast, enforcing the arbitration clause means that Parisi loses a substantive claim recognized by the U.S. Supreme Court – a Title VII pattern-or-practice claim. If anything, the *CompuCredit* case reinforces that there must be no sacrifice of substantive rights in arbitration: "The parties remain free to specify such matters [as whether claims may proceed in court or in the arbitral forum], so long as . . . the *guarantee* of . . . *the legal power to impose liability* . . . is preserved." *CompuCredit*, 132 S.Ct. at 671.

Goldman Sachs' admission that pattern-or-practice claims may not proceed individually (JA 295, 298) bars them from invoking *CompuCredit*. The parties disagree as to whether pattern-or-practice claims constitute an independent cause of action under Title VII. If one concludes (consistent with overwhelming authority) that Parisi is correct and that there is a substantive cause of action, and further that Goldman Sachs may not be forced into arbitration on a class basis unless it consents to do so (and they have not done so here), then it follows that enforcing the arbitration clause would strip a plaintiff of a substantive right under Title VII. Goldman Sachs' concession logically establishes the conflict between enforcing this arbitration clause and Title VII. Goldman Sachs may dispute all it

wishes whether Title VII supports a right to bring a pattern-or-practice claim, but it cannot dispute that, if it does, the clause conflicts with that substantive claim.

Finally, contrary to Goldman Sachs' assertion (Goldman Br. at 16 n.6), *CompuCredit* does not extend the holding of *Concepcion* regarding the reach of the FAA to federal statutory claims. In fact, *CompuCredit* has nothing to do with FAA preemption, the central issue in *Concepcion*.[8] *CompuCredit* does not conflict with the principle that even in the absence of an express statutory right to bring class claims in court, an arbitration clause precluding class claims is not enforceable where "forcing plaintiffs to bring their claims individually [] would make it impossible to enforce their rights under [federal law] and thus conflict with congressional purposes manifested in the provision of a private right of action in the statute." *AmEx III*, 667 F.3d at 213 n.5.

### B.    Liberal Policy of the FAA Does Not Override The Remedial and Deterrent Function of Title VII

Arbitration is enforced only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Mitsubishi Motors*, 473 U.S. at 637; *accord Pyett*, 556 U.S. at 273-74; *Green Tree Fin. Corp.-*

---

[8] *CompuCredit* acknowledges that the FAA could be overridden by contrary Congressional command, and Justice Sotomayor's concurrence explains that Congress need not "speak [] explicitly in order to convey its intent to preclude arbitration of statutory claims. We have never said as much, and on 'numerous occasions . . . have held that proof of Congress' intent may also be discovered in the history or purpose of the statute in question.'" 132 S. Ct. at 675 (Sotomayor, J., concurring) (internal citation omitted). *Accord AmEx III*, 667 F.3d at 213 n.5.

*Ala.*, 531 U.S. at 90; *Gilmer*, 500 U.S. at 28; *AmEx III*, 667 F.3d at 215-16 (motion to compel denied; plaintiffs "demonstrated that their statutory rights cannot be vindicated through individual arbitrations"). The FAA furnishes a mechanism to enforce arbitration agreements, but it does not trump substantive rights.

It is not enough that an individual claimant might be able to achieve some kind of remedy through the arbitral forum. The Supreme Court has made specific note that an arbitration agreement may not be enforced if it would erode the *remedial and deterrent* purpose of an act of Congress. *Cf. Gilmer*, 500 U.S. at 28 (enforcing arbitration where it would not undermine the ADEA's "remedial and deterrent function."); *Mitsubishi Motors*, 473 U.S. at 637. Thus, while individual Title VII claims may be submitted to compulsory arbitration, *Desiderio*, 191 F.3d at 205-06, an arbitration clause may not be enforced if it would prevent a well-pled Title VII pattern-or-practice claim (and appropriate relief) from advancing.

## C.    A Title VII Claim May Not Be Prospectively Waived

The Supreme Court and this Court reject prospective, contractual waivers of substantive rights in the form of arbitration agreements. *See Pyett*, 556 U.S. at 265 ("[F]ederal antidiscrimination rights may not be prospectively waived . . . ."); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540 (1995) (observing that "a prospective waiver of a party's right to pursue statutory remedies" would violate public policy); *Mitsubishi Motors*, 473 U.S. at 637 n.19

- 34 -

(if arbitration operates as a prospective waiver, then "we would have little hesitation in condemning the agreement as against public policy").

As this Court has observed, "the right to be treated in a non-discriminatory manner does not depend on the terms of any particular contract. Rather, these 'public law' rights were vested in workers as a class by Congress, and they are not subject to waiver or sale by individuals." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 116 (2d Cir. 2000). Thus, the Supreme Court has affirmed for decades that such rights cannot be forfeited by a contract. *See Pyett*, 556 U.S. at 265; *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 737-38 (1981) (noting that Title VII creates "nonwaivable, public law right[s]").

The District Court recognized that Goldman Sachs' arbitration policy, if construed to preclude class arbitration, makes impossible the filing of a private pattern-or-practice claim in *any* forum. As it held (JA 197 n.7), "[g]iven the case law in this district indicating the plaintiff may not bring a pattern or practice claim as an individual, she would have absolutely no recourse for proving her claim." Goldman Sachs would appear to have no answer to this holding. If anything, it appears to be Goldman Sachs' *design* to avoid a systemic Title VII action.

Goldman Sachs also insists that a Title VII claim is merely a "method of proof" that may be waived in arbitration, just as (for instance) the right to a jury, judicial review or rules of evidence or procedure may also be waived (Goldman

Br. at 11-12, 18, 22, 26-8, 32, 38). It is true that various properties of federal civil litigation are forfeited in arbitration, in the interest of the dispute-resolution process. Yet the core rules that make up the proof of a statutory claim – the elements of a cause of action, presumptions, burdens of proof – constitute substantive law. *See Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010) ("[I]t is long settled that the allocation of burden of proof is substantive in nature . . . .") (citing *Palmer v. Hoffman*, 318 U.S. 109, 117 (1943)); *James River Ins. Co. v. Kemper Cas. Ins. Co*., 585 F.3d 382, 385 (7th Cir. 2009) ("The allocation of burden of proof (in the sense of burden of persuasion-which side loses a tie) absolutely determines the outcome in cases where the evidence is in equipoise, and by doing so advances the substantive policies of a state . . . ."); *Sims v. Great Am. Life Ins. Co*., 469 F.3d 870, 879 (10th Cir. 2006) (burden of proof rules are substantive); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc*., 133 F. Supp. 2d 162, 168 (E.D.N.Y. 2001) (same); *Computer Econ., Inc. v. Gartner Grp., Inc*., 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999) (observing that "rules that define the elements of a cause of action, affirmative defenses, presumptions, burdens of proof, and rules that create or preclude liability are . . . obviously substantive").

This Court has already held that the Title VII pattern-or-practice method of proof implicates such core issues as presumptions and burden of proof. "The effect of the presumption from the liability stage is to substantially lessen each class

- 36 -

member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the *McDonnell Douglas* framework." *Robinson*, 267 F.3d at 159.

Thus, as the District Court recognized (JA 196), more than simple procedural issues are at stake in Parisi's case: "Title VII, as construed in the case law, makes substantively distinct claims available to those victims of alleged discrimination proceeding individually and those proceeding as a class." Thus, "*[o]nly* by proceeding on a class basis can the totality of [Parisi's] substantive claims against the defendants be adjudicated" (JA 197-98).

Parisi does *not* argue that she has a right to all the particulars of the Rule 23 process in arbitration, one of Goldman Sachs' strawman arguments (Goldman Br. at 32-34). Consistent with the FAA, the parties could have contracted for class arbitration, as the arbitrator found in *Jock v. Sterling Jewelers*, *Inc.*, 646 F.3d 113, 117 (2d Cir. 2011), and Parisi's pattern-or-practice case could have been arbitrated under whatever procedures were agreed to by the parties or set by the arbitrator. It is not the availability of specific Rule 23 procedures that creates the Title VII pattern-or-practice claim, as Goldman Sachs frames it. The personal right to bring such a claim was recognized in *Franks* and *Cooper*, independent of Rule 23. Thus, there is no Rules Enabling Act issue presented here (Goldman Br. at 27 n.14), because Rule 23 has not been used to "abridge, enlarge or modify any substantive

- 37 -

right." 28 U.S.C. § 2072(b). Goldman Sachs admitted in the District Court (JA 295-98) that a class action as a precondition to proceeding with a Title VII pattern-or-practice case. Without the arbitral equivalent of a class proceeding, a pattern-or-practice claim cannot be enforced through the Employment Agreement policy. Because no Title VII pattern-or-practice class case may be arbitrated under this agreement, Parisi is limited at most to a remedy for her personal disparate treatment claim. This limitation on arbitration abridges her Title VII rights.[9]

If burdens of proof and presumptions under Title VII may be waived by arbitration, then what else might employees be asked to waive next? Why not require that employees in arbitration prove Title VII claims only with direct evidence, which implicates yet another "method of proof?" *See, e.g.*, *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1185 (2d Cir. 1992) (contrasting "the direct method of proof contemplated by the last step of *Burdine*" with *McDonnell Douglas*); *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1113 (2d Cir. 1988) (noting that direct/indirect evidence routes constitute different "[m]ethods of [p]roving

---

[9] Goldman Sachs' reliance on *forum non conveniens* authority (Goldman Sachs Br. at 34) is misplaced. The Supreme Court holds that the FAA provides only for a change of forum, not of the underlying substantive law. *Mitsubishi Motors*, 473 U.S. at 628. Defendant points to no comparable rule in the law of *forum non conveniens*. If anything, the considerations under that rule are just the opposite; the parties submit not to just the forum, but to an entirely different (and possibly more hostile) body of law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981) ("[D]ismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery.").

[p]retext]"). By taking such steps, in the guise of merely altering the "method of proof," an employer's arbitration policy could make such claims progressively more difficult for employees to prove. This is the slippery slope that Goldman Sachs invites if arbitration is permitted to undermine substantive rights here.

### D. Employees in Arbitration Cannot Properly Be Deprived Of Their Practical Ability to Pursue Title VII Rights

In addition to holding that Goldman Sachs' argument affected a prospective waiver of Title VII pattern-or-practice liability, the District Court observed that – even if individual plaintiffs could somehow pursue such claims in arbitration – as a practical matter, pattern-or-practice proof far exceeds the means of an individual.

> In any event, even if there were no jurisprudential bar to bringing such claims on an individual basis, there are substantial practical ones. Specifically, a plaintiff would face obstacles obtaining discovery broad enough to make the prima facie showing required in a pattern-or-practice case (Pl. Memo. at 6-7). She may also have difficulty marshaling the resources to prosecute such a complex claim on her own, thus implicating the same analysis under which the Second Circuit found arbitration to be precluded in *American Express*.

(JA197 n.6).

Goldman Sachs' counter is that as long as the plaintiffs are high earners with potentially substantial damages, then essentially as a matter of law they can be expected to vindicate their statutory rights in arbitration (Goldman Br. at 13, 31). But in this case, Parisi would be entering the process with one claim (pattern-or-practice) voided from the outset. An employee cannot be expected individually to

match in scope what can be accomplished in a Title VII pattern-or-practice case. The expense of gathering expert evidence, systemic discovery, anecdotal testimony and other customary aspects of pattern-or-practice cases, necessary to prove discrimination is a "standard operating procedure," ordinarily borne by a class.

Apart from the practical circumstances that the District Court identified, though, the non-arbitrability of the pattern-or-practice claim cuts Parisi off from the wider scope of discovery and proof such a claim allows. By eliminating the pattern-or-practice claim at the outset, discovery as a rule will be cabined to the individual plaintiff's unique circumstances. *See, e.g.*, *Semple v. Fed. Express Corp.*, 566 F.3d 788, 794 (8th Cir. 2009) ("Generally, a plaintiff in a wrongful termination case is not entitled to company-wide discovery absent a showing of a particular need for the requested information."); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1084 (11th Cir. 1990) ("'[I]n the context of investigating an individual complaint the most natural focus is upon the source of the complained of discrimination-the employing unit or work unit.'") (quoting *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978)).

Goldman Sachs' citation to cases granting motions to compel arbitration over objections to limited discovery (Goldman Br. at 29-31) did not concern situations, as here, where the employees were categorically barred from bringing a systemic claim, with the legal consequence of narrowing discovery. *See, e.g.*,

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 386-87 (2d Cir. 2008) (noting in Sarbanes-Oxley case that employee had "both a contractual and a statutory basis for further discovery should it prove necessary for her claim"); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286 (4th Cir. 2007) ("[P]laintiffs do not contend that they would be unable to obtain adequate discovery from the defendant manufacturer in each of the separate arbitration proceedings, and they do not identify any other entity that might have discoverable information."); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 80-82 (D.C. Cir. 2005) (individual claim; "[a]t no point does Booker claim that the agreement prohibits the arbitrator from affording what Booker asserts is required"). Parisi would be compelled to forfeit the larger pattern-or-practice claim to bring the smaller, individual disparate treatment one.

Goldman Sachs also inaccurately argues (Goldman Br. at 34-39) that the District Court failed to carry out the individual inquiry prescribed by this Court in *AmEx II*. This misapprehends the District Court's decision. Parisi has never argued that she is incapable of vindicating an *individual disparate treatment* claim in arbitration. Therefore, Goldman Sachs' argument about the relative costs and potential remedies available for such a claim (Goldman Br. at 36-37) is beside the point. The relevant issue is whether Parisi can vindicate a Title VII pattern-or-practice claim in arbitration, apart from her individual Title VII claim.

- 41 -

The District Court found that the absence of any equivalent to a class or systemic framework under Goldman Sachs' policy doomed a pattern-or-practice claim at the outset.[10] The District Court did *not* hold, as Goldman Sachs contends (Goldman Br. at 35), that there is a "categorical exception for arbitration of an entire set of Title VII cases." Rather, the problem was *specific* to Goldman Sachs' policy and *this* claim, because the policy did not offer a framework for arbitrating a broad challenge to an allegedly discriminatory policy; the policy permits resolution of only individual disputes. The District Court evaluated the pattern-or-practice allegations of Parisi's complaint (JA 192) and concluded that "finding that the plaintiff impliedly agreed to waive her right to proceed on a class basis by agreeing to arbitrate any Employment Related Matters would prevent the plaintiff from vindicating her statutory cause of action" (JA 196-97).

Thus, because the Employment Agreement prospectively waives Parisi's right to challenge broad discriminatory policies, and because – as applied here – Parisi cannot practically or feasibly pursue her pattern-or-practice claim in individual arbitration, the District Court's decision should be affirmed.

---

[10] By way of contrast, in *Gilmer*, 500 U.S. at 32, the court noted under the U-4 arbitration clause that the NYSE rules did allow for "collective proceedings."

### E.    Defendant's Policy Arguments Provide No Basis for Ignoring Controlling Supreme Court and Circuit Law

Goldman Sachs argues that the District Court decision "creates a wholesale exemption from arbitration for any Title VII class action in which the plaintiff alleges a 'pattern or practice.'" (Goldman Br. at 11; *see also id*. at 34: stating that District Court's decided "categorically to exempt from the coverage of the FAA all Title VII cases in which 'pattern or practice' is alleged"). This is a gross exaggeration. A bare allegation of "pattern-or-practice" liability without more would not survive a motion to dismiss under the present Fed. R. Civ. P. 8 regime, which requires pleading of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Notably, Goldman Sachs does not challenge here that Parisi has alleged sufficient facts that, if credited, would state a pattern-or-practice claim. Nor does Goldman Sachs contend that Fed. R. Civ. P. 11 – let alone the expense and the additional legal duties of pursuing pattern-or-practice – is insufficient to deter employees from filing pleadings that allege a pattern-or-practice, merely to circumvent arbitration.

The record in this case, if anything, shows that Parisi's claim is a bona fide one. Goldman Sachs moved twice to strike Plaintiffs' class allegations (JA 15, Dkt. No. 66; JA 19, Dkt. No. 98), and each of these motions was denied by a Report and Recommendation or Order (JA 20, Dkt. No. 105, objections overruled, JA 27, Dkt.

No. 133; JA 27, Dkt. No.134, objections pending). Goldman Sachs also answered the allegations (JA 111-156), further indicating that the defendant understood them and that the pattern-or-practice claims are more than just a legal label.

Nor does affirming the decision below imply endorsement, as Goldman Sachs argues (Goldman Br. at 12), of a blanket "right to litigate a class action to challenge" a pattern-or-practice of sex discrimination. (*See also* Goldman Br. at 27 n.14, arguing that there is no right to litigate a pattern-or-practice claim on a class basis). Goldman Sachs here simply props up another strawman. While a plaintiff may file a case that seeks certification and remedies on behalf of a class, Parisi recognizes that certification of a class action under Fed. R. Civ. P. 23 is proper only if "'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Thus, there are many preconditions that an employee must meet to represent a class; it is *not* automatic. Parisi does not contend that certification is a "right." Instead, what is at issue is not a right to proceed, procedurally, as a class, but rather the right, guaranteed by Title VII, to be free from discriminatory employment practices, and to correct them.

**III.    The Supreme Court's Recent FAA Decisions in *Concepcion* and *Stolt-Nielsen* Do Not Support Reversal**

Goldman Sachs asserts that two recent Supreme Court decisions addressing the FAA support its position here: *Stolt-Nielsen*, 130 S. Ct. 1758, and *Concepcion*,

131 S. Ct. 1740. These cases, though, do not address whether an arbitration agreement that operates as a prospective waiver of rights may be enforced.

The Supreme Court's decision in *Stolt-Nielsen* addresses whether parties may be compelled to arbitrate class claims in the absence of clear language providing for class arbitration. *Stolt-Nielsen*, 130 S. Ct. at 1764, 1775. That question is immaterial to the instant appeal, as the District Court concluded that the arbitration agreement in this case (which is silent as to class claims) does not allow for class arbitration (JA 180-86). Parisi has not challenged that ruling on appeal.

The Supreme Court's decision in *Concepcion* does not control the outcome here, either. *Concepcion* examined FAA preemption with respect to a common law unconscionability rule adopted by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal.4th 148, 161, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). *Concepcion*, 131 S. Ct. at 1746-48. *Discover Bank* held that under California law, class action waivers were essentially *per se* unconscionable and unenforceable in consumer contracts involving small amounts of damages and allegations that "the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 113 P.3d at 1110. *Concepcion* rejected that approach, holding that the California rule is preempted by FAA § 2. *Concepcion*, 131 S. Ct. at 1753.

This case involves neither an unconscionability defense, nor a state common law rule of contract subject to preemption under § 2 of the FAA. Rather, this case involves a conflict between the enforceability of an arbitration agreement governed by the FAA and the substantive rights conferred upon employees under Title VII. When two federal laws collide, the court must try to reconcile the statutes so that their aims do not conflict. *See, e.g.*, *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 141-42 (2001) (federal statutes must be irreconcilable before one can be held to supersede the other); *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 237-39 (2d Cir. 2006) (distinguishing between the process of reconciling federal statutes and preemption). Under the FAA, the Supreme Court anticipated such a conflict, cautioning that – by agreeing to arbitration – "a party does not forgo the substantive rights afforded by the statute." *Mitsubishi Motors*, 473 U.S. at 628; *see also Pyett*, 556 U.S. at 265 (same).

As the District Court explained at length, courts refuse to enforce arbitration agreements that operate as prospective waivers of substantive statutory rights (JA 186-92). *Concepcion* does not undermine this principle. *See, e.g.*, *AmEx III*, 667 F.3d at 212 (rejecting "facile reading" that *Concepcion* and *Stolt-Nielsen* render class action arbitration waivers *per se* enforceable, and instead noting that neither case addresses whether an arbitration clause precluding class claims is enforceable

- 46 -

if "the practical effect of enforcement would be to preclude [plaintiffs'] ability to vindicate their federal statutory rights").

Finally, *Concepcion* does not disturb caselaw holding that pattern-or-practice claims are a substantive aspect of Title VII, or that such claims may otherwise be waived in arbitration. *Concepcion* is easily reconciled with the District Court conclusion that Parisi's substantive right under Title VII to bring pattern-or-practice claims may not be abridged by compelled arbitration.

## CONCLUSION

For the above reasons, the order denying the motion to compel individual arbitration should be affirmed.

Date: June 26, 2012                                Respectfully submitted,

                                                   By: /s/ Paul W. Mollica

Kelly M. Dermody                                   Adam T. Klein
Anne B. Shaver                                     Outten & Golden LLP
Lieff, Cabraser, Heimann                           3 Park Avenue, 29th Floor
      & Bernstein, LLP                             New York, New York 10016
275 Battery Street, 29th Floor                     (212) 245-1000
San Francisco, California 94111-3339               atk@outtengolden.com
(415) 956-1000
kdermody@lchb.com                                  Paul W. Mollica
                                                   Outten & Golden LLP
F. Paul Bland, Jr.                                 203 North LaSalle Street
Public Justice, P.C.                               Suite 2100
1825 K St. NW, Suite 200                           Chicago, Illinois 60601
Washington, DC 20006                               (312) 924-4888
Telephone: (202) 797-8600                          pwmollica@outtengolden.com
pbland@publicjustice.net
                                                   Attorneys for Plaintiffs-Appellees

- 47 -

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains **10,758** words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times Roman 14-point font.

Dated: June 26, 2012                    Respectfully submitted,

/s/ Adam T. Klein
_____

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on June 26, 2012, I electronically served the foregoing Plaintiffs-Appellees' Brief, via ECF upon the following:

Zachary D. Fasman
Barbara B. Brown
PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022
(212) 318-6000
zacharyfasman@paulhastings.com
barbarabrown@paulhastings.com

Theodore O. Rogers, Jr.
Suhana S. Han
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
rogerst@sullcrom.com
hans@sullcrom.com

**Attorneys for Defendants-Appellants Goldman, Sachs & Co. and The Goldman Sachs Group, Inc.**

I certify that an electronic copy was uploaded to the Court's electronic filing system and six (6) hard copies of the foregoing Plaintiffs-Appellees' Brief were sent to the Clerk's Office By Hand Delivery to:

Clerk of Court
United States Court of Appeals, Second Circuit
United States Courthouse
500 Pearl Street, 3rd floor
New York, New York 10007
(212) 857-8576

/s/ Adam T. Klein
_____