# 11-5229-cv

# United States Court of Appeals
## for the
## Second Circuit

LISA PARISI, SHANNA ORLICH, H. CHRISTINA CHEN-OSTER,

*Plaintiffs-Appellees,*

– v. –

GOLDMAN, SACHS & CO., THE GOLDMAN SACHS GROUP, INC.,

*Defendants-Appellants.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

PAUL HASTINGS LLP
75 East 55th Street
New York, New York 10022-3205
(212) 318-6000

SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

*Attorneys for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................ 1

ARGUMENT ................................................................................. 5

I.    BECAUSE PARISI CANNOT AVOID CONTROLLING SUPREME
      COURT AND SECOND CIRCUIT PRECEDENT, THIS COURT
      SHOULD ENFORCE HER VALID ARBITRATION AGREEMENT. ....... 5

      A.    Parisi Cites No "Contrary Congressional Command" Overriding the
            Enforcement of Her Arbitration Agreement. ........................................5

      B.    There Is No Non-Waivable Right to Bring A "Pattern-or-Practice"
            Class Action. ..........................................................................7

            1.    *Chin* Confirms that Parisi Has No "Freestanding" Pattern-or-
                  Practice Cause of Action Under Title VII. ...............................9

            2.    There Is No Non-Waivable Right to Use the *Teamsters'*
                  "Pattern-or-Practice" Method of Proof. ....................................10

            3.    Class Actions Are Waivable Procedural Devices.....................13

II.   TO AVOID ENFORCEMENT OF HER ARBITRATION AGREEMENT,
      PARISI AND HER *AMICI* RELY ON DECISIONS HAVING NO
      RELEVANCE HERE. .................................................................. 16

      A.    Parisi's Title VII Remedies Are Not Limited in Arbitration. .............16

      B.    Parisi Faces No Access Barriers in Arbitration. .................................19

      C.    Parisi Cannot Avoid Enforcement of Her Arbitration Agreement by
            Citing Differences Between Court and Arbitration Procedures. ........20

CONCLUSION .................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Celestine v. Petroleos de Venezuella SA*,
266 F.3d 343 (5th Cir. 2001), *reh'g denied*, 275 F.3d 48 (5th Cir. 2001) ..........9

*Chardon v. Soto*,
462 U.S. 650 (1983)...............................................................................14

*Chin v. The Port Authority of New York and New Jersey*,
No. 10-1904, 2012 WL 2760776 (2d Cir. July 10, 2012) ..........................passim

*CompuCredit v. Greenwood*,
132 S. Ct. 665 (2012)...............................................................................1, 5, 7

*Cooper v. Federal Reserve Bank of Richmond*,
467 U.S. 867 (1984)...............................................................................12

*County of Washington v. Gunther*,
452 U.S. 161 (1981)...............................................................................16

*Deposit Guar. Nat'l Bank v. Roper*,
445 U.S. 326 (1980)...............................................................................4, 14

*Desiderio v. Nat'l Ass'n of Security Dealers, Inc.*,
191 F.3d 198 (2d Cir. 1999) .......................................................................6, 15

*Dothard v. Rawlinson*,
433 U.S. 321 (1977)...............................................................................16

*EEOC v. Waffle House*,
534 U.S. 279 (2002)...............................................................................18

*Franks v. Bowman Transp. Co.*,
424 U.S. 747 (1976)...............................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991)...............................................................................passim

*Hohider v. United Parcel Serv., Inc.*,
574 F.3d 169 (3d Cir. 2009) .......................................................................10

*Hollander v. Am. Cyanamid Co.*,
    895 F.2d 80 (2d Cir. 1990) ...................................................................18

*In re American Express Merchs. Litig.*,
    667 F.3d 204 (2d Cir. 2012) ...........................................................passim

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977)...................................................................2, 3, 13

*Karp v. Cigna Healthcare, Inc.*,
    No. 11-10361 (FDS), 2012 WL 1358652 (D. Mass. Apr. 18, 2012) ...........10, 11

*Ledbetter v. Goodyear Tire & Rubber Co.*,
    550 U.S. 618 (2007)...................................................................16

*Lowery v. Circuit City Stores, Inc.*,
    158 F.3d 742 (4th Cir. 1998), *vacated on other grounds*,
    527 U.S. 1031 (1999)...................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...................................................................1, 5, 21

*Nicholson v. CPC Int'l Inc.*,
    877 F.2d 221 (3d Cir. 1989) ...................................................................15

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003)...................................................................17

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989)...................................................................16

*Reynolds v. Barrett*,
    No. 10-4208-PR, 2012 WL 2819351 (2d Cir. July 11, 2012) ...........................9

*Robinson* v. *Metro N. Commuter R.R. Co.*¸
    267 F.3d 148 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002) ...................12

*Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*,
    130 S. Ct. 1431 (2010)...................................................................14

*Tucker v. Gonzales*,
    No. 03CIV3106 (LTS) (FM), 2005 WL 2385844 (S.D.N.Y.
    Sept. 27, 2005) ...................................................................9, 10

*Velez v. Marriott PR Mgmt., Inc.*,
    590 F. Supp. 2d 235 (D.P.R. 2008) ...................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)...............................................................4, 13

*Watson v. Ft. Worth Bank & Trust,*
    487 U.S. 977 (1988)....................................................................16

## STATUTES

9 U.S.C. § 4 ........................................................................................1

28 U.S.C. § 2072(b) .........................................................................4, 14

Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat.
    1071, 1081 (1991)..................................................................6, 7

## OTHER AUTHORITIES

AAA Employment Arbitration Rules and Mediation Procedures (2009), Rule
    39(d).........................................................................................17

FINRA Code of Arbitration Procedure for Industry Disputes (2011), Rule
    13802(e)-(f).............................................................................17

## **PRELIMINARY STATEMENT**

In their 98 pages of opposition briefs, Plaintiff-Appellee Lisa Parisi and her *amici* overstate the importance of this appeal by relitigating policy disputes long ago resolved in favor of the arbitrability of Title VII and other federal statutory claims.  But this appeal presents no such unresolved issues.  To the contrary, controlling Supreme Court and Second Circuit law, including, most recently, this Court's decision in *Chin v. The Port Authority of New York and New Jersey*, No. 10-1904, 2012 WL 2760776 (2d Cir. July 10, 2012), make clear that the District Court erred in affirming the Magistrate Judge's refusal to enforce Parisi's arbitration agreement.

Parisi simply has no way around the Supreme Court's repeated holdings that (i) the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, *requires* the "rigorous[] enforce[ment]" of arbitration agreements, including those encompassing Title VII claims, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citation omitted), and (ii) such agreements must be enforced "according to their terms … unless the FAA's mandate has been 'overridden by a contrary congressional command.'"  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citation omitted).

Here, three undisputed points confirm the Magistrate Judge's error in not enforcing Parisi's arbitration agreement according to its terms.  *First,* the

Magistrate Judge cited no "contrary congressional command" overriding the FAA for *any* Title VII claims.  (*See* Opp'n Br. at 30-33.)  *Second*, the Magistrate Judge found that Parisi's arbitration agreement "encompassed" her Title VII claims, and she validly "waived" any right to bring "class claims" in court or in arbitration. (JA 180, 186.[1])  *Third*, Parisi, a highly compensated portfolio manager, admits that she is fully capable of vindicating her own discrimination claims in arbitration. (Opp'n Br. at 41.)

Notwithstanding these undisputed points compelling arbitration here, Parisi attempts to defend the Magistrate Judge's finding that she had a non-waivable, "substantive right under Title VII" to bring a "pattern-or-practice *claim*" in court. (Opp'n Br. at 32 (emphasis added).)  But, unlike for the Department of Justice ("DOJ") and the Equal Employment Opportunity Commission ("EEOC"), Congress has never created a pattern-or-practice cause of action for private plaintiffs.  Instead, in private class but not individual actions, courts have consistently recognized that the pattern-or-practice "method of proof," whereby proof of a pattern or practice of discrimination can support a rebuttable presumption of discriminatory employment decisions, is not a distinct cause of action but just "another means by which a Title VII plaintiff's initial burden of

---

[1] "JA" refers by page number to the "Joint Appendix," filed on March 27, 2012.

proof can be met." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 (1977).

Indeed, two weeks ago, in *Chin v. Port Authority of New York*, this Court confirmed that private plaintiffs have no right to bring a "freestanding [pattern-or-practice] cause of action" under Title VII.  2012 WL 2760776, at *8 n.8.  In doing so, the Court joined numerous other circuits in explaining that the phrase "pattern-or-practice" refers either to the "*unique form of liability* available in government actions under [42 U.S.C.] § 2006e-6, … *or* to the *burden-shifting framework* set out in *Teamsters* and available both to the government in § 2000e-6 litigation and to class-action plaintiffs in private actions alleging discrimination."  2012 WL 2760776, at *6 (emphasis added); *see id.* at *8 ("Since *Teamsters*, this burden-shifting framework has been known as the '*Teamsters* method of proof.'").  Thus, this Court made clear that although "courts—including the Supreme Court—sometimes loosely refer to the *Teamsters* method of proof as a 'pattern-or-practice claim,'" there is no private "freestanding [pattern-or-practice] cause of action."  *Id.* at *8 n.8.

To end-run her arbitration agreement, Parisi nonetheless advocates what *Chin* and other courts have rejected:  the existence of a supposedly non-waivable, substantive right "to pursue a systemic Title VII claim" through the "class mechanism."  (Opp'n Br. at 2-3.)  But "[t]he right of a litigant to employ Rule 23 is

a procedural right only, ancillary to the litigation of substantive claims." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980) (emphasis added).  The availability of the class procedural mechanism *presupposes* the existence of a cause of action; Rule 23 does not create a non-waivable, substantive right to bring such an action.  Tellingly, Parisi and her *amici* cite no decision (other than the Magistrate Judge's below) where a court has transformed a party's ability to bring a class action into a non-waivable right.  Nor can Parisi get past the Rules Enabling Act, which forbids interpreting Rule 23 "to 'abridge, enlarge or modify **any** substantive right.'"  *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (citing 28 U.S.C. § 2072(b)) (emphasis added).

As the Supreme Court explained in *Gilmer v. Interstate/Johnson Lane Corp.*, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.'" 500 U.S. 20, 33 (1991) (citation omitted).  And, Parisi does not dispute (*see* Opp'n Br. at 27, 37) that she may seek to introduce evidence of an alleged Goldman, Sachs, & Co. ("Goldman Sachs") pattern or practice *affecting her*, regardless of whether her Title VII claim is resolved in court or through arbitration.

Finally, to overcome governing law, Parisi and her *amici* rely on inapposite cases involving express limitations on statutory remedies in arbitration agreements or practical economic barriers to access to arbitration not present here.  By

contrast, Parisi admits that she can fully vindicate her own Title VII claims in arbitration, including seeking all of the monetary and non-monetary relief to which she is entitled.  (*See* Opp'n Br. at 41.)  In fact, the only relief that she cannot seek in arbitration is prospective relief on behalf of a class, but the Supreme Court has made clear that an employee can waive her right to seek such relief.  *See Gilmer*, 500 U.S. at 32.

## ARGUMENT

I.   **BECAUSE PARISI CANNOT AVOID CONTROLLING SUPREME COURT AND SECOND CIRCUIT PRECEDENT, THIS COURT SHOULD ENFORCE HER VALID ARBITRATION AGREEMENT.**

A.   **Parisi Cites No "Contrary Congressional Command" Overriding the Enforcement of Her Arbitration Agreement.**

Neither Parisi nor her *amici* identify any "contrary *congressional* command" in Title VII overriding the strong federal policy, reflected in the FAA, favoring the strict enforcement of arbitration agreements. *CompuCredit*, 132 S. Ct. at 669 (emphasis added) (citation omitted).  As the Supreme Court explained, "[h]aving made the bargain to arbitrate, the party should be held to it *unless Congress itself* has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Mitsubishi*, 473 U.S. at 628 (emphasis added) (citation omitted).

This exception is narrow:  when asked to compel arbitration, a court must "assume that *if Congress* [had] intended the substantive protection afforded by a given statute to include the protection against waiver of the right to a judicial

forum, the intention will be deducible *from the text or the legislative history*" of that statute.  *Id.* at 628 (emphasis added).  But the only language in Title VII mentioning arbitration expressly states that "the use of … arbitration *is encouraged* … to resolve disputes under [Title VII]."  Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (1991) (emphasis added).  By its terms, Section 118 "evinces a plain Congressional purpose of encouraging arbitration of Title VII claims and not one of precluding such arbitration."  *Desiderio v. Nat'l Ass'n of Security Dealers, Inc.*, 191 F.3d 198, 204-05 (2d Cir. 1999).

Moreover, there is nothing in Title VII referencing the class action mechanism or the private use of the pattern-or-practice method of proof.  As this Court in *Chin* explained:  "[t]he phrase 'pattern-or-practice' appears only once in Title VII—in a section that authorizes the government to pursue injunctive relief against an employer 'engaged in a pattern-or-practice of resistance to the full enjoyment of any of the rights secured by' the statute."  *Chin*, 2012 WL 2760776, at *6 (quoting 42 U.S.C. § 2000e–6).

As the party seeking to avoid her valid arbitration agreement, Parisi "bears the burden of establishing that *Congress intended* to preclude arbitration of the statutory claim at issue."  *In re American Express Merchs. Litig.* ("*Amex III*"), 667 F.3d 204, 216 (2d Cir. 2012) (emphasis added).  But she makes no effort to demonstrate that Congress ever took any action to override the FAA's mandate

favoring arbitration of Title VII claims, much less to bar class action waivers in arbitration agreements or to mandate a freestanding pattern-or-practice cause of action for private plaintiffs.

Instead, Parisi urges this Court to ignore the holding of *CompuCredit* and to adopt a lower standard allowing arbitration agreements to be overridden based on "purely judicially-created rule[s]." (Opp'n Br. at 26.)[2] Even if this Court were to consider Parisi's standard, there is no judicially-created rule giving an individual the substantive right to use the "pattern-or-practice" method of proof through the class action procedure. As this Court's recent decision in *Chin* confirms, nothing in Title VII or Federal Rule of Civil Procedure 23 creates a non-waivable, substantive right to bring a Title VII class action.

## B. There Is No Non-Waivable Right to Bring A "Pattern-or-Practice" Class Action.

In refusing to enforce Parisi's arbitration agreement, the Magistrate Judge erroneously presumed that "Title VII … makes [available] *substantively distinct*

---

[2] Parisi barely acknowledges the majority opinion in *CompuCredit*, but instead stresses Justice Sotomayor's two-Justice concurrence in which she argued that the requisite congressional "command" to displace the FAA could be found in the "history or purpose of the statute in question." (Opp'n Br. at 33 n.8) (citing *CompuCredit*, 132 S. Ct. at 675 (Sotomayor, J., concurring).) That minority view does not help Parisi; she can cite no legislative history or any other indication that Congress had *any* FAA-related purpose in enacting or amending Title VII, other than to "encourage" arbitration. *See* Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (1991).

*claims* … to those victims of alleged discrimination proceeding individually and those proceeding as a class," which "lessen[s] each class member's evidentiary burden relative to that which would be required if the employee were proceeding separately with an individual disparate treatment claim under the *McDonnell Douglas* framework." (JA 196 (emphasis added).)[3]    The Magistrate Judge concluded that, because of this asserted evidentiary advantage, "finding that [Parisi] impliedly agreed to waive her right to proceed on a class basis … would prevent [her] from vindicating her statutory cause of action."  (JA 196-97.)

The Magistrate Judge's reasoning was flawed, because (i) as *Chin* makes clear, private plaintiffs such as Parisi (unlike the DOJ and EEOC) have no "freestanding" right to bring a pattern-or-practice cause of action, or even the right to use the pattern-or-practice method of proof; and (ii) the Supreme Court has held that parties can waive the procedural right to bring a class action in arbitration, including any perceived advantages of sharing the burden of proof with a class.

---

[3] Under the *McDonnell Douglas* framework, which applies in non-class Title VII actions, "[t]o establish an employer's liability for discrimination in violation of Title VII, a private plaintiff ordinarily must show that an employer took an adverse employment action *against him or her* because of his or her race, or on account of another protected ground."  *Chin*, 2012 WL 2760776, at *7 (emphasis in original).

### 1.    *Chin* Confirms that Parisi Has No "Freestanding" Pattern-or-Practice Cause of Action Under Title VII.

By its terms, Title VII creates no distinct private "pattern-or-practice" class action claim.    Rather, as *Chin* underscores, although "courts—including the Supreme Court—sometimes loosely refer to the *Teamsters* method of proof as a 'pattern-or-practice claim,'" this evidentiary framework is *not* "a freestanding cause of action."   (*Compare Chin*, 2012 WL 2760776, at *8-9 & n.8 *with* Opp'n Br. at 32.)   Indeed, in *Chin*, this Court used the phrase "method of proof" more than a dozen times in describing the *Teamsters*' pattern-or-practice framework. *See also Reynolds v. Barrett*, No. 10-4208-PR, 2012 WL 2819351, at *8 n.12 (2d Cir. July 11, 2012) (referring to *Chin* "for a discussion of the history of the pattern-or-practice framework").

Other courts have similarly confirmed that "[a] pattern or practice case is not a separate and free-standing cause of action …, but is really merely another method by which disparate treatment can be shown."   *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 355 (5th Cir. 2001), *reh'g denied*, 275 F.3d 48 (5th Cir. 2001) (internal quotation marks omitted).[4]  Such methods of proof are "merely

---

[4] *See also Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998) ("The courts of appeals have … permitted pattern or practice class action suits using the *Teamsters* method of proof."), *vacated on other grounds*, 527 U.S. 1031 (1999); *Tucker v. Gonzales*, No. 03CIV3106 (LTS) (FM), 2005 WL 2385844, at *5

… sensible, orderly way[s] to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3d Cir. 2009) (citation omitted) ("[t]he *Teamsters* framework was judicially promulgated as a method of proof").

Because "[a] pattern-or-practice claim is clearly not a separate cause of action," but rather "a method of proving a Title VII claim," *Karp v. Cigna Healthcare, Inc.*, No. 11-10361 (FDS), 2012 WL 1358652, at *8 (D. Mass. Apr. 18, 2012), the District of Massachusetts recently enforced an arbitration agreement where the plaintiff, like Parisi, sought to represent a Title VII class, and expressly refused to follow the Magistrate Judge's decision below.

### 2. There Is No Non-Waivable Right to Use the *Teamsters'* "Pattern-or-Practice" Method of Proof.

Although Parisi can seek to introduce pattern-or-practice evidence in arbitration (*see infra*, at 20), she proposes to elevate the ability to rely on this method of proof in class actions into non-waivable, substantive right effectively

---

(S.D.N.Y. Sept. 27, 2005) (Swain, J.) (dismissing plaintiff's purported stand-alone "pattern-or-practice" cause of action and holding that "pattern or practice is merely a method of proving prohibited disparate treatment…. None of the cases cited by the parties recognizes a cause of action for 'pattern or practice' discrimination separate and distinct from a claim that an employer deliberately mistreated employees on racial or other prohibited grounds."); *Velez v. Marriott PR Mgmt., Inc.*, 590 F. Supp. 2d 235, 241 (D.P.R. 2008) ("pattern or practice discrimination does not constitute an independent cause of action but rather an additional procedural vehicle available for establishing disparate discriminatory treatment").

barring the individual arbitration of many Title VII claims.  But the *Teamsters'* pattern-or-practice method of proof is nothing more than a judicially-created expedient for the efficient trial of Title VII class actions, designed, as this Court has put it, "as *no more than* an application of the *McDonnell Douglas* burden-shifting framework in the class action context." 2012 WL 2760776, at \*7 (emphasis added) (citing *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 773 (1976)).  As the *Karp* court correctly ruled:  "Title VII does not create a statutory right in a certain method of proving a discrimination claim, but creates a right to seek relief from discrimination.... [F]oreclosing a particular method of proof does not prevent plaintiff from bringing her discrimination claim."  2012 WL 1358652, at \*11 n.19.

Moreover, the notion that plaintiff can more easily establish a "pattern or practice" of discrimination through a class action is both wrong and beside the point.  In an individual Title VII action, the plaintiff prevails by showing, by a preponderance of the evidence, that a prohibited characteristic impermissibly motivated the challenged employment decision.  The plaintiff need not introduce any evidence of how the employer has treated other protected employees. By contrast, a *class* plaintiff first must establish that the employer engaged in an impermissible pattern or practice of discrimination—*across the class of protected*

*employees*—before the fact-finder will consider whether a discriminatory decision harmed any individual employee.

Parisi gets no support from *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984), where the Supreme Court held that an adverse finding as to the class—*i.e.*, that the employer's standard procedure was not discriminatory— did not bar the claim of individual employees. *Cooper* merely recognizes that class and individual cases present different questions and does not, as Parisi claims, elevate the pattern-or-practice method of proof to a non-waivable right for purposes of determining the arbitrability of a federal claim.

Finally, *Robinson v. Metro N. Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002), upon which the Magistrate Judge and Parisi place inordinate weight (*see* Opp'n Br. at 36-37), merely describes the operation of the judicially-created pattern-or-practice method of proof as applied in class actions. *Robinson* observes that once class liability is established, the presumption shifts to the employer on the question of whether individual employees have been harmed. *Id*. at 159. But that language does not, as Parisi suggests, indicate that the class plaintiff has an easier road to recovery than a plaintiff in an individual disparate treatment case. The passage in *Robinson* relied on by the Magistrate Judge and Parisi merely presupposed that the class plaintiffs

had already done the heavy lifting of establishing class liability, and, at that point, the individual claimant's work had largely been done.

There certainly is no provision in Title VII creating a non-waivable right to employ the pattern-or-practice method of proof in class actions or reflecting Congress's intent to favor plaintiffs who bring class actions over those who bring individual actions.[5]   Title VII requires both class and individual plaintiffs to present individualized proof to seek compensatory damages or individualized equitable relief, such as back or front pay.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) (quoting *Teamsters*, 431 U.S. at 361) ("[w]hen the [class] plaintiff seeks individual relief such as reinstatement or backpay after establishing a pattern or practice of discrimination, 'a district court must usually conduct additional proceedings … to determine the scope of individual relief'") (alteration in original).

### 3.    Class Actions Are Waivable Procedural Devices.

This Court's confirmation in *Chin* that Title VII does not create a "freestanding" pattern-or-practice cause of action disposes of Parisi's core contention that she has a non-waivable right to litigate a Title VII class action.  But

---

[5] Indeed, the only relief that a class can obtain based on a pattern-or-practice showing is prospective injunctive relief (and here, because Parisi is a former employee, she cannot seek prospective relief on behalf of any putative class of Goldman Sachs Managing Directors.  *See Dukes*, 131 S. Ct. at 2559-60.).

as even the Magistrate Judge recognized:  "[A] Rule 23 class action alone 'neither change[s] plaintiffs' separate entitlements to relief nor abridge[s] defendants' rights,'" and is "'ancillary to the litigation of substantive claims.'"   (JA 196 (quoting *Shady Grove Orthopedic Assoc. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1443 (2010), and *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 332 (1980)).)

It is settled law that Rule 23 promotes "efficiency and economy of litigation," *Chardon v. Soto*, 462 U.S. 650, 659 (1983) (citation omitted), but does not "enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  Parisi admits that whatever procedural "rights" Rule 23 bestows, the parties to an arbitration agreement can contract such procedural devices away (*see* Opp'n Br. at 37), and she cites no authority for the proposition that the procedural device in Rule 23 cannot be waived in an arbitration agreement, because none exits.  *See*, *e.g.*, *Amex III,* 667 F.3d at 219 (emphasizing that "[w]e do not [conclude here] that class action waivers in arbitration agreements are per se unenforceable").

Parisi cites no case that creates or recognizes a substantive, non-waivable right to lead a class in a Title VII case.  Instead, she cites cases, such as *Cooper* and *Franks,* where the Supreme Court recognized that in private class actions, courts can borrow the pattern-or-practice method of organizing proof from government litigation.  But there is a vast gulf between the recognition of a method of proof in a private class action and the Magistrate Judge's holding that such a

method creates a non-waivable "right" to litigate a class action sufficient to override the strong federal policy favoring arbitration.

When all is said and done, Parisi cannot avoid that the Supreme Court in *Gilmer,* in upholding the enforceability of the arbitration of ADEA claims, expressly rejected the argument that a lack of class procedures supported denying enforcement of an otherwise valid arbitration agreement: "[E]ven if the arbitration could not go forward as a class action, … the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred."  500 U.S. at 32 (quoting *Nicholson v. CPC Int'l Inc.*, 877 F.2d 221, 241 (3d Cir. 1989) (Becker, J., dissenting)).

Moreover, in upholding the mandatory arbitration of Title VII claims, this Court emphasized that "it is untenable to contend that compulsory arbitration conflicts with [Title VII's] provision for the right to a jury trial, because *Gilmer* ruled that compulsory arbitration clauses could be enforced in claims under the ADEA, a statute that explicitly provides for jury trials."  *Desiderio*, 191 F.3d at 205.  Surely, if an employee can waive her express statutory right to a jury in a Title VII case, that employee can agree to forego her ability to make use of the class action procedural device.

-15-

## II.   TO AVOID ENFORCEMENT OF HER ARBITRATION AGREEMENT, PARISI AND HER *AMICI* RELY ON DECISIONS HAVING NO RELEVANCE HERE.

Parisi and her *amici* cite various inapposite cases where courts have held that compelling arbitration would bar a plaintiff from vindicating express statutory rights. But each of those decisions involved either remedial limitations in the arbitration agreement or practical barriers to access to arbitration not present here.

### A.   Parisi's Title VII Remedies Are Not Limited in Arbitration.

Parisi's agreement to arbitrate had no effect on her individual Title VII remedies. In fact, she acknowledges that she is fully capable of vindicating her individual Title VII discrimination claims in arbitration. (Opp'n Br. at 41.) She can pursue a claim that Goldman Sachs' compensation, promotion and performance evaluation policies or practices were used to discriminate against her—a disparate treatment claim. And, with a proper predicate showing, she can mount a Title VII disparate impact challenge to those policies.[6]

---

[6] *See, e.g., Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977 (1988) (individual employee's challenge to employer's subjective promotions decision process under Title VII disparate impact theory); *Dothard v. Rawlinson*, 433 U.S. 321 (1977) (individual applicant's challenge to state prison height and weight requirements under Title VII disparate impact theory); *Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618 (2007) (individual employee's challenge to discriminatory pay decisions under Title VII disparate treatment theory); *Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) (individual's employee's challenge to failure to promote her to partnership under Title VII disparate treatment theory); *County of Washington v. Gunther,* 452 U.S. 161 (1981) (individual employee's challenge to

If she prevails in arbitration, Parisi can seek every form of individual relief available to her in court, including declaratory and injunctive relief as to any of Goldman Sachs' policies that affected her, back pay, and uncapped compensatory and punitive damages (for demonstrated intentional discrimination), as well as her attorneys' fees, expert fees and costs.

Specifically, under the FINRA rules governing Parisi's claims (JA 105), arbitrators "may award any relief that would be available in court under the law," and "reasonable attorneys' fee reimbursement, in whole or in part, as part of the remedy in accordance with applicable law." FINRA Code of Arbitration Procedure for Industry Disputes (2011), Rule 13802(e)-(f). Similarly, the applicable AAA rules authorize the arbitrator to "grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law." AAA Employment Arbitration Rules and Mediation Procedures (2009), Rule 39(d).[7]

---

pay disparity between male guards and female guards under Title VII with a disparate treatment theory).

[7] Where any question exists as to how the arbitrator will construe remedial limitations, "the proper course is to compel arbitration" and leave for a later enforcement action whether, in fact, the plaintiffs' statutory rights were infringed. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003) (uncertainty over whether arbitrator could award punitive damages).

Because Parisi unquestionably can vindicate her individual claims in arbitration, she argues—erroneously—that she could not challenge "broad discriminatory policies" in arbitration. (Opp'n Br. at 42.) That is wrong. She can challenge in arbitration any of Goldman Sachs' policies or practices *affecting her*, including by discovering and offering statistical or other evidence of an alleged "pattern-or-practice" of discrimination at Goldman Sachs. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) ("It is well-settled that an individual disparate impact treatment plaintiff may use statistical evidence regarding an employer's purported nondiscriminatory explanation."). To that end, FINRA and AAA employment arbitration rules grant arbitrators broad discretion to admit such evidence.

In short, the remedies that Parisi can obtain in arbitration would make her whole, and those remedies would address Goldman Sachs' policies impacting her. Moreover, as the Supreme Court has recognized, regardless of whether individual employees have waived their right to bring class actions, such "arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief." *Gilmer*, 500 U.S. at 32; *see EEOC v. Waffle House*, 534 U.S. 279 (2002).

**B.     Parisi Faces No Access Barriers in Arbitration.**

In a final attempt to avoid her arbitration agreement, Parisi miscites this Court's decisions in the *Amex* litigation for the broad proposition that requiring her to arbitrate individually, and not as a class representative, "would make it impossible [for her] to enforce [her] rights under [Title VII] and thus [would] conflict with congressional purpose manifested in the provision of a private right of action in the statute."  (Opp'n Br. at 33 (quoting *Amex III*, 667 F.3d at 213, n.5).)

In *Amex*, the plaintiffs had so-called "negative value" antitrust claims; these class claims were substantial in the aggregate, but too small individually for any rational party (or counsel) to pursue.  This Court carefully defined the issue before it:  "whether a class-action arbitration waiver clause is enforceable even if the plaintiffs are able to demonstrate that *the practical effect of enforcement would be to preclude their ability to vindicate their federal statutory rights*."  *Amex III*, 667 F.3d at 212 (emphasis added).

In refusing to enforce the *Amex* arbitration agreements, this Court expressly did *not* hold that class action waivers in arbitration agreements are unenforceable, or even that such agreements were unenforceable in all antitrust cases.  Rather, the Court held that the plaintiffs had "demonstrated that *their* statutory rights [could

not] be vindicated through individual arbitrations."  *Id.* at 215-16 (emphasis added).

No such conclusion is possible here.  It is beyond dispute that the cost of individual arbitration would not effectively deprive Parisi, a highly compensated executive, of the statutory protections of Title VII.  To the contrary, Parisi revealingly concedes that the "relative costs and potential remedies" are "beside the point" here.  (Opp'n Br. at 41.)  Thus, unlike in *Amex*, enforcing Parisi's arbitration agreement would *not* "effectively depriv[e Parisi *or any of her fellow Managing Directors*] of the statutory protections of the [discrimination] laws." *See Amex III*, 667 F.3d at 217.

### C.  Parisi Cannot Avoid Enforcement of Her Arbitration Agreement by Citing Differences Between Court and Arbitration Procedures.

Rehashing the sort of anti-arbitration arguments that the Supreme Court has squarely rejected, Parisi points to potential procedural differences in arbitration— such as the scope of discovery and the forms and amount of evidence she would be allowed to use—and insists that her promise to arbitrate can be avoided if these changes make it "progressively more difficult for [her] to prove" her case.  (Opp'n Br. at 39.)  But courts do not refuse to enforce an arbitration agreement merely because arbitration is "different" from court litigation; such differences are an inherent feature of arbitration *in every case.*

Even if, hypothetically, arbitration could impact the ease or difficulty a party might face at trial, the agreement still must be enforced. An agreement to arbitrate *necessarily* involves a trade-off; the agreement achieves expedition, but does so by avoiding some of the formal attributes and expense of a judicial forum. In any given case, expedition can work to the disadvantage of one side or the other. But such procedural differences are part of the parties' voluntary bargain; under the FAA, such differences are not sufficient to void Parisi's arbitration agreement. As the Supreme Court held in *Gilmer,* 500 U.S. at 31, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration.'" (quoting *Mitsubishi,* 473 U.S. at 628).

## **CONCLUSION**

For the reasons set forth herein and in Goldman Sachs' opening brief, the decision below should be reversed, the court should compel arbitration of Parisi's claim, and her lawsuit should be dismissed.

Dated:  July 24, 2012
New York, New York

PAUL HASTINGS LLP


By:     /s/ Barbara B. Brown____
BARBARA B. BROWN
ZACHARY D. FASMAN
75 East 55th Street
New York, New York 10022
(212) 318-6000
barbarabrown@paulhastings.com
zacharyfasman@paulhastings.com

SULLIVAN & CROMWELL LLP
ROBERT J. GIUFFRA, JR.
THEODORE O. ROGERS, JR.
SUHANA S. HAN
125 Broad Street
New York, New York 10004
(212) 558-4000
giuffrar@sullcrom.com
rogerst@sullcrom.com
hans@sullcrom.com

*Attorneys for Defendants*
GOLDMAN, SACHS & CO. and
THE GOLDMAN SACHS GROUP,
INC.

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)**

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B). It contains 4,832 words, excluding the parts of the brief

exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has

been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in

<u>14 Point Times Roman</u>.

Dated:  July 24, 2012